Robert M. WYNNE, Plaintiff,

v.

SHIPPENSBURG UNIVERSITY OF PENNSYLVANIA; Anthony F. Ceddia, Benjamin S. Nispel, Hugh E. Jones, H. Erik Shaar, et al., Defendants.

Civ. No. 85–0694.

United States District Court,
M.D. Pennsylvania.

Dec. 20, 1985.

Debra K. Wallet, Camp Hill, Pa., for plaintiff.

Susan J. Forney, Sr. Deputy Atty. Gen., Harrisburg, Pa., for defendants.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

We consider here the motion of Defendant Shippensburg University (hereinafter Shippensburg) to dismiss this complaint as to it for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. This motion was briefed in timely fashion as was the opposing brief of Plaintiff Robert M. Wynne, formerly a tenured faculty member at Shippensburg. Thus, this motion is now ripe for decision. For the reasons which follow, we shall grant the motion.

This is essentially a wrongful termination action brought under the guise of 42 U.S.C. § 1983—the federal statute which provides a remedy for those persons whose federally protected rights are violated by persons acting under color of state law—28 U.S.C. § 1343 and the 14th Amendment to the United States Constitution.

Plaintiff alleges that he had taught at Shippensburg from August 24, 1970 until what he claims was his *sudden* termination on August 17, 1984. He further alleges that he had acquired tenured status in May of 1973 and, thus, acquired a property interest in his position which cannot be extinguished without due process of law (i.e. adequate notice of the reason for his dismissal and an opportunity to be heard in opposition to said dismissal). Finally, he alleges that a collective bargaining agreement was in force between the Commonwealth of Pennsylvania and the Association of Pennsylvania State College and University Faculty which provided that tenured faculty members could not be terminated without just cause.

Shippensburg does acknowledge the fact that Plaintiff Wynne enjoyed tenured status but denies that his termination was sudden or that he had no opportunity to oppose it. Shippensburg's position was stated concisely as:

... Plaintiff had been continually advised of his position being in jeopardy, and plaintiff had been evaluated negatively repeatedly, with respect to his teaching performance. See Docket Item 7, paragraph 15.

... Plaintiff was also given several opportunities to present reasons, either in person or in writing, why the termination should not take place. *Id.*, paragraph 26.

Defendant Shippensburg's motion to dismiss this case is based on two premises: (a) that Shippensburg is a state agency and, thus, is not susceptible to suit under § 1983 because it is not a "person" within the meaning of that statute; or (b) that the 11th Amendment to the United States Con-

stitution, as delineated in *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), and its progeny, precludes lawsuits against a state or its agencies by its own citizens.

I. May Shippensburg be characterized as a "person" within the meaning of 42 U.S.C. § 1983?

Shippensburg's first defense is predicated on the fact that it would answer the question above in the negative. *Rochester v. White*, 503 F.2d 263 (3d Cir.1974), is cited for the proposition that " ... federal courts have long recognized that neither the Commonwealth nor its agencies are "persons" within the meaning of § 1983".[1] This begs the questions, however, of whether Shippensburg University is a state agency.

Plaintiff Wynne argues that the term "person" " ... extends to such entities as corporations and municipalities ..." and " ... Universities are among the entities which have been held to be 'persons'. (citations omitted)".[2] It is, therefore, obvious that, to answer this question of whether Shippensburg is a "person" or "state actor" under § 1983, we must first determine whether Shippensburg may be appropriately characterized as a state agency. This leads directly to Defendant's second argument.

II. May Shippensburg be characterized as a state agency which is immune to suit in federal court due to immunity conferred by the 11th Amendment?

This question is to be resolved under a very different standard from that used in deciding whether an entity is a "person" or "state actor" under § 1983.[3] The parties agree that the test to be uti-

lized in determining whether an agency is an "arm of the state" or state agency for 11th Amendment purposes was first announced in *Urbano v. Board of Managers of New Jersey State Prison*, 415 F.2d 247 (3d Cir.1969), *certiorari denied*, 397 U.S. 948, 90 S.Ct. 967, 25 L.Ed.2d 129 (1970). We note that the *Urbano* test has been utilized recently to resolve a similar dispute by Judge Caldwell in *Braderman v. Pennsylvania Housing Finance Agency*, 598 F.Supp. 834, 836 (M.D.Pa.1984). We think it plain that the *Urbano* test is the appropriate standard to apply here.

The briefs of the parties frame an interesting question as to whether the current Pennsylvania State Universities—Shippensburg included—remain state agencies in the aftermath of the enactment of 24 P.S. § 20–2001–A *et seq.*, the statute which has transformed the former state colleges into state universities. Plaintiff admits that it was clear prior to the passage of said statute that the state colleges were state agencies. Plaintiff admits, too, that *Skehan v. Board of Trustees of Bloomsburg State College*, 538 F.2d 53 (3d Cir.1976), *cert. denied* 429 U.S. 979, 97 S.Ct. 490, 50 L.Ed.2d 588, a case relied upon by Defendant Shippensburg, stood for the very proposition that the state colleges of Pennsylvania were agencies of the state. Plaintiff alleges, however, that the passage of 24 P.S. § 20–2001–A *et seq.* has robbed *Skehan, supra*, of its vitality and that "the 1982 legislative enactment which transformed 'Shippensburg State College' into the present 'Shippensburg University' substantially altered the relationship between the Commonwealth of Pennsylvania and the University."[4]

Plaintiff then asserts:[5]

ist between the entity sought to be characterized as such a "person" and the state. It is a far more substantial relationship that is required to support a finding that an entity is a "state agency" for 11th Amendment purposes.

1. See Docket Item 10 at page 4.

2. See Docket Item 11 at pages 11 and 12.

3. The concept of a § 1983 "state actor" as developed in *Braden v. University of Pittsburgh*, 552 F.2d 948 (3d Cir.1977) and reaffirmed in *Krynicki v. University of Pittsburgh*, 742 F.2d 94 (3d Cir.1984), requires only that a "symbiotic relationship" (some degree of interdependence) ex-

4. See Docket Item 11 at page 2.

5. *Id.* at pages 3 and 4.

The test for determining whether or not an entity is an agency of the state for Eleventh Amendment purposes has been set out and explained in *Urbano v. Board of Managers of New Jersey State Prison*, 415 F.2d 247 (3d Cir.1969), *cert. denied*, 397 U.S. 948, 90 S.Ct. 967, 25 L.Ed.2d 129 ... Several factors are to be considered:

... Local law and decisions defining the status and nature of the agency involved in its relations to the sovereign are factors to be considered, but only one of a number that are of significance. Among the other factors, no one of which is conclusive, perhaps the most important is whether, in the event plaintiff prevails, the payment of the judgment will have to be made out of the state treasury; significant here also is whether the agency has the funds or the power to satisfy the judgment. Other relevant factors are whether the agency is performing a governmental or proprietary function; whether it has been separately incorporated; the degree of autonomy over its operations; whether it has the power to sue and to be sued and to enter into contracts; whether its property is immune from state taxation, and whether the sovereign has immunized itself from responsibility for the agency's operations. *Urbano, supra* at 250–51.

In the reply brief of Defendant Shippensburg there is no quarrel with the Plaintiff's position that the factors mentioned in *Urbano* should be resorted to in an effort to determine whether Shippensburg is a state agency. Defendant Shippensburg does state, however, that "it has properly invoked Eleventh Amendment immunity, when the relevant (Urbano) factors are considered...." [6] It remains for this Court to examine the facts of this case with respect to these factors in order to determine the status of Shippensburg University. If Shippensburg is an "arm of the state" with respect to the weight of the *Urbano* factors, then it enjoys 11th Amendment

immunity from suit in federal court. We shall sequentially analyze these factors as they affect this case.

A. Local Law and Decisions Defining the Status and Nature of Shippensburg University in its Relation to the Commonwealth of Pennsylvania.

Plaintiff contends: [7]

The statutory scheme is apparently too new for authoritative state court decisions on the sovereign immunity issue, but the enabling legislation itself is helpful in understanding the relationship between Shippensburg University and the Commonwealth. Unlike its predecessor state college, Shippensburg University is a part of a "body corporate and politic" which is "independent of the Department of Education". Section 20–2002–A(A).

Plaintiff also points out that this new system is governed by a 16 member Board of Governors which appoints a chancellor and a president who are charged with overseeing the day-to-day operation of state universities. He also notes that planning and coordinating the development and operation of the system is a responsibility which lies with the Board of Governors and not with the Secretary of Education.

While this data seems to suggest that Shippensburg is sufficiently independent of Commonwealth control to be denied the status of a state agency, Plaintiff has neglected to include language from the same statute he cites which is less supportive of his position. As Defendant points out in its reply brief: [8] "24 P.S. § 20–2002–A(a) provided, *inter alia*, that the State System of Higher Education is 'a body corporate and politic constituting a *public corporation and government instrumentality*'...." (emphasis ours). Moreover, there is a Pennsylvania decision subsequent to the enactment of the statute which transformed the state colleges into state universities which deals with the question of

---

**6.** See Docket Item 12 at page 3.

**7.** See Docket Item 11 at pages 4 and 5.

**8.** Docket Item 12 at page 3.

whether the Commonwealth System of Higher Education is a state agency. While said decision—*Pennsylvania Industries for the Blind and Handicapped v. Commonwealth of Pennsylvania, State System of Higher Education*, 87 Pa.Cmwlth. 1, 485 A.2d 1233 (1985)—does not go directly to the seminal question in the case *sub judice*, it provides strong evidence that the Courts of Pennsylvania are likely to construe 24 P.S. §§ 20–2001 *et seq.* as continuing to provide that the various state universities are state agencies. The Commonwealth Court (per Judge Collins) held that the various state universities are required to comply with § 2409.1 of the Administrative Code of Pennsylvania which mandates that the Commonwealth purchase products and services "from non-profit making agencies for the handicapped without competitive bidding, if furnished at fair market price". See *Pennsylvania Industries, supra* at page 1, 485 A.2d 1233.

We find that *Pennsylvania Industries* likely heralds a trend in the Courts of Pennsylvania to require state universities to comply with the regulations generally intended to govern the operation of state agencies. We find, too, that the clear language of the statute which conferred university status on the former state colleges denoting these new universities to be part of a "public corporation and government instrumentality" strongly indicates that the legislature intended that these fledgling universities be so closely associated with the state as to remain the state agencies they clearly were in terms of *Skehan*, supra. Most significantly, we find that the first *Urbano* factor—the weight of local law and decisions—is in favor of Defendant's position that it is a state agency.

### B. Source of Funds to Satisfy Judgment

The *Urbano* Court characterized this inquiry as the most significant in the determination of whether any organization is a state agency. It is not disputed here that some degree of funding for the state universities is provided by the Commonwealth. The Plaintiff argues: [9]

> Any impact of a judgment against Shippensburg University upon the Commonwealth of Pennsylvania will be indirect, at best. It does not matter for 11th Amendment purposes that the entity in question receives "a significant amount of money from the state". *Mt. Healthy City School Board v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 573, 50 L.Ed.2d 471 (1977).

The Plaintiff also points out that Shippensburg has authority to accept funds from "foundations, corporations, or any other source". § 20–2010–A(11).

Nevertheless, it stands to reason that any judgment rendered against Shippensburg or any of its sister universities will result in a drain upon the treasury of Pennsylvania since the state has undertaken primary responsibility for funding these entities. This is true because 24 P.S. § 20–2002–A(b) provides: "As successor institutions to the State Normal Schools, appropriations for their operation are *ordinary expenses of government*, requiring only a majority vote of each House of the General Assembly. *The State System of Higher Education shall have the same preferred status for appropriations as is enjoyed by its constituent institutions*". (emphasis ours). This language makes it plain that Shippensburg and the Commonwealth of Pennsylvania are inextricably linked financially and that the Commonwealth does not supply monies to Shippensburg out of periodic spasms of benevolence but, rather, out of a statutorily imposed, continuing obligation.

Plaintiff suggests that "... In a 'close case', it may be necessary to go 'beyond the statutory language and examine the operational structure of the agency and the relationship to the Commonwealth'." See Docket Item 11 at note 2 on page 6 which quotes *Blake v. Kline*, 612 F.2d 718, 738 (3d Cir.1979). Our examination of *Blake*, supra, indicates that the explanation of the

---

**9.** Docket Item 11 at page 7.

*Blake* Court regarding the import of a state satisfying a judgment incurred by an organization resides more in the reason for the state's contribution than in the level of said contribution. The *Blake* Court stated:

> ... Although we recognize that the exact percentage of the state contribution is not determinative of eleventh amendment immunity, the nature and size of those funds may be probative.

> .    .    .    .    .

> For eleventh amendment purposes, the nature of the state's obligation to contribute may be more important than the size of the contribution.

> ... a court should consider whether the state, in making the contribution, is acting in the role of a sovereign or is contributing in some other capacity. *Blake,* supra at 723, 724.

Since Plaintiff himself concedes that public education has traditionally been a governmental function [10] and since, in this Court's view, 24 P.S. §§ 20–2001(A) *et seq.* are permeated with indications that the legislature's intent was to create state controlled as opposed to state subsidized universities, we find that any contribution Pennsylvania would make toward satisfying a judgment entered against Shippensburg in this context would be pursuant to a governmental function and, thus, would be an exercise of sovereignty in terms of *Blake.* In light of this determination we conclude that the state, because of its statutory duty to provide continuing financial support to Shippensburg would, at the least, contribute to the satisfaction of any judgment against Shippensburg and would do so out of its sovereign responsibility. Therefore, we find that the "source of funds" and "government as opposed to proprietary" factors announced in *Urbano* and clarified in *Blake* weigh in the Defendants' favor in this case.

### C.  Separate Incorporation

The language of the legislature in 24 P.S. § 20–2002–A(a) does denominate the state universities as separate corporations but also, as we have previously noted, describes them as a "public corporation and government instrumentality".  We think this language ambiguous enough to preclude this Court from finding unquivocally that these universities are truly separately incorporated or, on the strength of the language alone, "arms of the state".  However, we do think that, considering the state's *obligation* to provide some degree of funding to Shippensburg and the power vested in the Governor of Pennsylvania to unilaterally determine who is on Shippensburg's Board of Governors, a conclusion that Shippensburg and its sister universities are corporations separate and distinct from the Commonwealth of Pennsylvania would border on the ludicrous.

### D.  Degree of Autonomy

This issue has been discussed in several respects above and—in view of the Defendant Shippensburg's partial dependency upon state funds, the obviously pervasive control the Governor of Pennsylvania exerts over its operations by his decisions as to who sits on the Board of Governors, and the fact that the Commonwealth Court of Pennsylvania indicated in *Pennsylvania Industries,* supra, that the state can limit the ability of Shippensburg and its sister universities to enter into contracts—we must find that the weight of the evidence here indicates that Shippensburg is not sufficiently autonomous to escape characterization as a state agency.

### E.  Sovereign Immunity from the Agency's Operation

This Court is aware that, while Pennsylvania has abolished sovereign immunity with respect to eight carefully delineated areas in which state representatives are prone to commit torts,[11] it has not statutorily abolished Commonwealth immunity with respect to the acts or omissions of the

---

**10.**  *Id.* at page 8.

**11.**  See 42 Pa.C.S.A. § 8522.

employees of state universities.[12] What import we can derive from this fact will necessarily involve an exercise in assumptions that we think it unwise to undertake. Thus, we find that this factor is neutral as regards support to the parties to this dispute.

### III.

In summation, we find that, by applying the *Urbano* factors to this lawsuit as urged by Plaintiff Wynne, the conclusion is compelled that Shippensburg is an "arm" or an *alter ego* of the Commonwealth of Pennsylvania and, therefore, immune from suit in federal court by virtue of the immunity afforded such entities by the 11th Amendment. See *Pennhurst State School Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), which states in pertinent part:

> This Court's decisions thus establish that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Employees v. Missouri Public Health Dept.*, supra, 411 U.S. [279] at 280, 93 S.Ct. [1614], at 1616 [36 L.Ed.2d 251 (1973)]. There may be a question, however, whether a particular suit in fact is a suit against a State. It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.... *Pennhurst*, supra, 104 S.Ct. at 908.

Since we have previously found that Shippensburg University is a state agency by virtue of the degree of control exercised over it by the Commonwealth of Pennsylvania, and since we have determined (see footnote 12) that Pennsylvania has not waived its Eleventh Amendment immunity, we now declare that this lawsuit may not be maintained against Defendant Shippensburg University.

This Court has an additional concern. We wonder about the efficacy of trying this case when it is apparent from the pleadings that an arbitrator has been assigned to this controversy who is empowered to award Plaintiff much of the relief he seeks here. Mindful of the traditional deference federal courts show the arbitration process in the labor context [13]—and this case is essentially a dispute as to whether procedures outlined in a collective bargaining agreement were followed—we direct that this case be closed until such time as the arbitrator rules on Plaintiff's grievance pursuant to the provisions of the collective bargaining agreement between his union and Shippensburg University.

---

12. In fact, Pennsylvania has expressly reserved its 11th Amendment immunity. See 42 Pa.C.S.A. § 8521(b).

13. See the *"Steelworkers' Trilogy"*: 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409: and 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).