Lois P. LACH, Administratrix of the Estate of Ronald T. Lach, Jr., Deceased, as Administratrix and on her own behalf, Plaintiff,

v.

Edward Palmer ROBB, individually and as a Security Police Officer of California University of Pennsylvania; George Parkinson Kyle, individually and as a Security Police Officer of California University of Pennsylvania; Miles Jackson Crago, individually and as a Security Police Officer of California University of Pennsylvania; John P. Watkins, individually and as President of California University of Pennsylvania; California University of Pennsylvania; James Encapera, individually and as a Police Officer of the Borough of California; Charles Rapp, individually and as a Police Officer of the Borough of California; Joseph Dochinez, individually and as Mayor of the Borough of California; and Borough of California, a municipal corporation, Defendants.

Civ. A. No. 87–468.

United States District Court, W.D. Pennsylvania.

Feb. 16, 1988.

Harry S. Cohen, Pittsburgh, Pa., for plaintiff.

Thomas F. Halloran, Sr. Deputy Atty. Gen., Pittsburgh, Pa., for Robb, Kyle, Crago, Watkins and California University of Pennsylvania.

Donald Bebenek, Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, Pa., for Dochinez and Borough of California.

Peter J. Taylor, Pittsburgh, Pa., for Encapera and Rapp.

## MEMORANDUM OPINION

TEITELBAUM, District Judge.

On June 20, 1986 Ronald P. Lach, Jr. was stopped by university security officers for motor vehicle violations, fled on foot, and drowned in the Monongahela River. His mother subsequently brought this civil rights action against the three university security officers who allegedly stopped, pursued, and failed to rescue Lach; the university which employed them; and its president; the two municipal police officers who allegedly pursued and failed to rescue Lach; the municipality which employed them; and its mayor.[1] A claim under 42

---

1. Also named as a defendant was the beer distributor which allegedly sold alcoholic beverages to Lach. The action against the beer distribu-

U.S.C. § 1983 is asserted against the university security officers, the university, its president, the municipal police officers, the municipality, and its mayor.[2] State law claims for wrongful death and survival are asserted against the university security officers, the university president, the municipal police officers, and the mayor; a state law claim for failure to maintain realty is asserted against the university.

Presently before the court are defendants' motions for summary judgment on the § 1983 claims. For the reasons set forth summary judgment will be granted for all defendants on the § 1983 claims and the pendent state law claims will be dismissed without prejudice.

The following facts are not disputed in the record. At approximately 1:00 a.m. on the morning of June 20, 1986 three university security officers stopped Lach for motor vehicle violations. Lach was unable to produce any identification, and it was believed that he had been drinking.

Lach fled on foot and was pursued by the university security officers. During the pursuit, one officer rolled or threw his flashlight at Lach to trip Lach, but the flashlight missed Lach. The university security officers radioed for assistance from the municipal police.

The university security officers followed Lach to an embankment above the Monongahela River. Lach either climbed or fell down the embankment.

The university security officers remained on the embankment. When the municipal police officers arrived on the scene, Lach was already in the river.

All the officers shouted to Lach to return and shone their lights on him. The officers radioed for a river rescue boat and to stop river traffic.

The cause of death was drowning. Lach's blood alcohol level was .17.

### The Municipal Defendants

The municipal police officers move for summary judgment on the § 1983 claim contending there is no evidence that they violated Lach's constitutional rights.

Fed.R.Civ.P. 56(c) mandates the entry of summary judgment, after an adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 321–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265, 273 (1986). A party moving for summary judgment bears the initial burden of showing or pointing out to the court that there is an absence of evidence to support the non-moving party's case. At 322–26, 106 S.Ct. at 2553–54, 91 L.Ed.2d at 274–275. The non-moving party then must show evidence sufficient to establish the existence of essential elements of its case on which it will bear the burden of proof at trial. At 321–24, 106 S.Ct. at 2552–53, 91 L.Ed.2d at 273. The non-moving party can make this showing through depositions, answers to interrogatories, admissions and affidavits. At 324–26, 106 S.Ct. at 2554, 91 L.Ed.2d at 275. The non-moving party cannot rely on the mere allegations of its pleadings. At 324–26, 106 S.Ct. at 2554, 91 L.Ed.2d at 275.

The standard for summary judgment mirrors the standard for a directed verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–51, 106 S.Ct. 2505, 2511, 91 L.Ed. 2d 202, 213 (1986). The inquiry before the court is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. At 251–53, 106 S.Ct. at 2512, 91 L.Ed. 2d at 214. If there is a mere scintilla of evidence, or if the evidence is merely colorable or is not significantly probative, summary judgment may be granted. At 247–51, 106 S.Ct. at 2510–11, 91 L.Ed.2d at 212–213.

---

tor was dismissed for want of subject matter jurisdiction.

2. Claims under 42 U.S.C. § 1985(2) and (3) and § 1986 were dismissed for failure to state a claim.

Section 1983 makes actionable only deprivations of constitutional rights. *Jackson v. Byrne*, 738 F.2d 1443, 1445 (7th Cir.1984). There is no constitutional right to adequate police protection, absent some special relationship between the police and the injured party. *Estate of Bailey by Oare v. County of York*, 768 F.2d 503, 508–511 (3d Cir.1985). The fact that Pennsylvania law imposes a duty on a police officer to make a reasonable effort to rescue a person in danger, *Altamuro v. Milner Hotel, Inc.*, 540 F.Supp. 870, 877 n. 9 (E.D.Pa.1982) cannot create a constitutional right.

A special relationship, giving rise to a constitutional right to adequate police protection, may be created if the police put a person in a position of danger or if the police know that the person, as distinguished from the public at large, faces a special danger. *Estate of Bailey*, 768 F.2d at 510. For example, a special relationship, based on the police putting a person in a position of danger, arose when police arrested the driver of a car and abandoned the passenger children thereby placing the children in a position of danger. *Id.* at 510 citing *White v. Rochford*, 592 F.2d 381 (7th Cir.1979). A special relationship, based on knowledge that the person, as distinguished from the public at large, faces a special danger, arose when an agency knew that a child had been abused by the mother's lover, but nevertheless returned the child to the mother's custody without insuring that the mother's lover did not have access to the child. *Id.* at 510. *See also Lowers v. City of Streator*, 627 F.Supp. 244 (N.D.Ill.1985) (police knew rapist would repeat crime; held, special relationship); *Jackson v. Byrne*, 738 F.2d 1443 (7th Cir. 1984) (city failed to rescue children from burning home; held, no special relationship).

Although plaintiff argues that the municipal police officers placed Lach in a position of danger thereby creating a special relationship with Lach, there is no evidence to support this argument. It is not disputed that the municipal police officers did not stop Lach, did not arrest Lach, and did not pursue Lach as he fled on foot. It is not disputed that although the municipal police officers were called to assist in the pursuit of Lach, by the time the municipal police officers arrived Lach was already in the river. It is evident that since the municipal police officers arrived after Lach was in the river, they could not have caused him to go into the river.

Although plaintiff also argues that the municipal police officers knew that Lach faced a special danger, there is no evidence to support this argument. Of course the municipal police officers knew that Lach was floundering in the river. But a comparison with the decided cases discussed above makes it clear that this is not the kind of knowledge of a special danger that gives rise to a special relationship.

There is no evidence that there was a special relationship between the municipal police officers and Lach. A special relationship between the municipal police officers and Lach is an essential element of plaintiff's claim that the municipal police officers violated Lach's constitutional rights by failing to rescue Lach. Because plaintiff cannot show sufficient evidence to raise a jury question on an essential element of her constitutional claim, the municipal police officers are entitled to summary judgment on the § 1983 claim.

The municipality and the mayor move for summary judgment on the § 1983 claim contending that since there is no evidence that the municipal police officers violated Lach's constitutional rights, there is no basis for municipal liability under § 1983.

If there is no underlying constitutional tort, then there can be no liability of the municipality or its supervisory officials. *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986). Because there is no evidence that the municipal police officers violated Lach's constitutional rights, the municipality and the mayor are entitled to summary judgment on the § 1983 claim as well.

### The University Defendants

The university moves for summary judgment contending that suit against it in fed-

eral court is barred by the eleventh amendment.

■ Unless the state consents, the eleventh amendment bars a civil rights suit brought against a state in federal court. *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir.1981). Pennsylvania has expressly withheld consent to suit. *Id.* The eleventh amendment's bar extends to suits brought against departments and agencies of a state having no existence apart from the state. *Id.*

■ The former Pennsylvania state colleges were state agencies, immune from suit in federal court under the eleventh amendment. *Skehan v. Board of Trustees of Bloomsburg State College*, 538 F.2d 53, 62 (3d Cir.), *cert. denied*, 429 U.S. 979, 97 S.Ct. 490, 50 L.Ed.2d 588 (1976); *Samuel v. University of Pittsburgh*, 375 F.Supp. 1119, 1126 (W.D.Pa.1974), *aff'd in part and rev'd in part*, 538 F.2d 991 (3d Cir. 1976). In 1983 Pennsylvania created the State System of Higher Education which transformed the former state colleges into state universities. 24 P.S. § 20–2002–A(a). The State System of Higher Education is a state agency immune from suit in federal court under the eleventh amendment. *Skehan v. State System of Higher Education*, 815 F.2d 244, 247 (3d Cir.1987). It follows that the constituent parts of the State System, the state universities, also share eleventh amendment immunity. *Id.* citing with approval *Wynne v. Shippensburg University*, 639 F.Supp. 76 (M.D.Pa.1985). Because the university is immune from suit in federal court under the eleventh amendment, it is entitled to summary judgment on the § 1983 claim.

The university president moves for summary judgment on the § 1983 claim contending there is no evidence he violated Lach's constitutional rights.

Plaintiff alleged the university president failed to provide training and supervision in river rescue and in proper apprehension of suspects. There is no evidence that the university president had contemporaneous knowledge of the pursuit and drowning of Lach or knowledge of a prior pattern of similar incidents.

■ In this Circuit a supervising public official has no affirmative constitutional duty to train, supervise and discipline subordinates so as to prevent violations of constitutional rights. *Chinchello v. Fenton*, 805 F.2d 126, 132–134 (3d Cir.1986). While supervising public officials may not in any way authorize, encourage, or approve constitutional torts, they have no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct. *Id.* at 133 citing *Black v. Stephens*, 662 F.2d 181 (3d Cir.1981), *cert. denied*, 455 U.S. 1008, 102 S.Ct. 1646, 71 L.Ed.2d 876 (1982).

■ Other Circuits which have held that a failure to train or supervise may state a § 1983 claim have required both 1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and 2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate. *Id.* at 133. Plaintiff's proffered evidence fails to satisfy the first of these essential elements of § 1983 liability.

Because allegations of inadequate training and supervision fail to state a § 1983 claim against a supervisory official, the university president is entitled to summary judgment on the § 1983 claim.

The university security officers move for summary judgment on the § 1983 claim contending there is no evidence they violated Lach's constitutional rights, or in the alternative, that they are entitled to qualified immunity.

Plaintiff had alleged the university security officers stopped Lach for motor vehicle violations, Lach fled on foot and the security officers pursued Lach. Plaintiff alleged that in the course of trying to subdue and apprehend Lach, the security officers used "excessive and potentially deadly force." Plaintiff alleged the security officers "cornered" Lach along the riverbank. Plaintiff alleged that "in an attempt to avoid the continuing excessive and potentially deadly force" Lach "fled over the

bank" and was "chased out into the river." Plaintiff alleged that "having placed Lach in a perilous position out in the Monongahela River," the security officers took no action to rescue him.

The undisputed facts before the Court present a scenario significantly different from that alleged: as the university security officers were pursuing Lach, one of them grabbed at Lach and later rolled or threw his flashlight at Lach to trip Lach, but missed him. Contrary to plaintiff's allegations of excessive force, the university security officers did not draw weapons, or fire at Lach, or beat Lach, or with the exception of grabbing at Lach, have any physical contact with Lach whatsoever.

The undisputed facts also indicate that the university security officers followed Lach to the riverbank, and that Lach climbed or fell down the embankment to the river. The university security officers remained on the embankment, shone lights on Lach, and shouted to Lach to return to shore. Contrary to plaintiff's allegations that the university security officers placed Lach in a position of danger, Lach placed himself in a position of danger. Lach fled toward the river, and after climbing or falling down the embankment, refused to heed the officers' shouts to return to shore.

■ Qualified immunity shields government officials performing discretionary functions from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. *Anderson v. Creighton,* —— U.S. ——, ——, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523, 530 (1987). The relevant inquiry is the objective question whether a reasonable officer could have believed the defendant's action to be lawful, in light of clearly established law. *Id.* at ——, 107 S.Ct. at 3040, 97 L.Ed.2d at 532.

■ Here the question becomes whether a reasonable officer could have believed that university security officers' actions— throwing a police flashlight at Lach to attempt to trip him as he fled and pursuing Lach to a riverbank and shouting for Lach to return—were lawful in light of the constitutional proscription against the use of excessive force and the constitutional obligation to rescue a person whom the state places in a position of danger. Stating the question makes it obvious that it must be answered in the affirmative. Notwithstanding plaintiff's arguments that the university security officers acted with "reckless disregard" or "deliberate indifference" to Lach's rights, based on the undisputed facts before the Court, the university security officers are shielded by qualified immunity.

Because the university security officers have qualified immunity on the § 1983 claim, they are entitled to summary judgment on the § 1983 claim.

### Pendent Claims

All defendants are entitled to summary judgment on the § 1983 claims: the municipal police officers because there is no evidence of a constitutional obligation to rescue Lach, the municipality and its mayor because there is no underlying constitutional tort, the university because of the eleventh amendment, the university president because there is no evidence of a constitutional violation, and the university security officers because of qualified immunity. Plaintiff has also asserted pendent state law claims: failure to maintain realty against the university, wrongful death and survival against the university president and the university security officers, and wrongful death and survival against the mayor and municipal police officers.

■ The eleventh amendment bars pendent state law claims brought against a state or its agencies in federal court. *Allegheny County Sanitary Authority v. United States EPA,* 732 F.2d 1167, 1173– 1174 (3d Cir.1984). Therefore, the eleventh amendment bars the failure to maintain realty claim asserted against the university.

■ Similarly the eleventh amendment bars pendent state law claims seeking damages against a state official acting in his official capacity brought in federal court. *Laskaris v. Thornburgh,* 661 F.2d

at 25–26. However, the eleventh amendment does not bar pendent state law claims seeking damages against a state official acting in his individual capacity. *Id.* Because the university president and university security officers are sued in both their official and individual capacities, the eleventh amendment bars the wrongful death and survival actions against them in their official capacities.

Thus, there remains pendent state law claims for wrongful death and survival asserted against the university president in his individual capacity, the university security officers in their individual capacities, the mayor in his official and individual capacities and the municipal police officers in their individual and official capacities.

■ The decision whether to retain jurisdiction over the remaining pendent state law claim is committed to the sound discretion of the district court. *Carnegie–Mellon University v. Cohill,* —— U.S. ——, ——, 108 S.Ct. 614, 618, 98 L.Ed.2d 720 (1988). In order to decide whether to exercise jurisdiction over pendent state law claims a court should consider and weigh the values of judicial economy, convenience, fairness and comity. *Id.* In the usual case in which all federal law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining pendent state law claims. *Id.* at n. 7; *see also Weaver v. Marine Bank,* 683 F.2d 744, 746 (3d Cir.1982).

■ In the present case all the federal claims have been eliminated before trial. Moreover, several of the pendent state law claims, because of the eleventh amendment, may only be heard in state court. There is presently pending in state court a wrongful death and survival action against the university. Given this posture, the pendent state law claims will be dismissed without prejudice.

An appropriate order will be entered.