Lisa J. O'HARA, Plaintiff,

v.

INDIANA UNIVERSITY OF PENN-
SYLVANIA, Helen Soltis, in her indi-
vidual capacity, Linda Szul, in her
individual capacity, William McPher-
son, in his individual capacity and
Virginia Hemby, in her individual ca-
pacity, Defendants.

No. Civ.A. 00–1496.

United States District Court,
W.D. Pennsylvania.

March 26, 2001.

Ogg Cordes Murphy & Ignelzi, Mary R Roman, Pittsburgh, PA, for plaintiff.

Att Gen Office, Kemal Alexander Mericli, Pittsburgh, PA, for defendants.

### OPINION

AMBROSE, District Judge.

Pending before the Court is a Partial Motion to Dismiss by Defendant Indiana University of Pennsylvania ("the University"). Specifically, the Motion seeks to dismiss the claims of Plaintiff Lisa J. O'Hara under the Civil Rights Act of 1866, 42 U.S.C. § 1983 ("Section 1983"), and for punitive damages under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1) ("Title VII"). For the reasons discussed below, the Motion is denied in part as moot and granted in part.

## I. INTRODUCTION

### A. Factual History[1]

Lisa O'Hara was hired by Indiana University of Pennsylvania in August 1996 as a temporary, non-tenure track instructor in the Department of Technology and Training (the "Department"), part of the University's Eberly College of Business. In January 1997, Ms. O'Hara enrolled at the University of Pittsburgh as a student in the doctoral program in Instruction Design and Technology. By the spring of 1999, she had completed all degree requirements except writing her dissertation, the point informally known in academia as "ABD" (all but dissertation).

In the Fall of 1998, the Department began a search for a tenure-track assistant or associate professor. Even before the position was advertised to the public, several members of the search committee advised Ms. O'Hara it was unlikely she would be considered for the position because "the consensus among the department ... was that [it] should hire a male for the position for image reasons." (Complaint, "Compl.," ¶ 32.) However, because the job posting indicated ABD candidates would be considered, Ms. O'Hara submitted her application in February 1999. A second similar position became available in April 1999 and the University decided to fill both vacancies from the same candidate pool.

Plaintiff and two men were identified as the top three candidates for the positions. Both men were interviewed in April 1999, subsequently received offers from the University, but turned them down. Ms. O'Hara was not interviewed. When she inquired of the Department chairman why she had not been considered for either position, she was told that she lacked the necessary "information technology back-

---

**1.** Unless otherwise noted, the facts in this     section are taken from Plaintiff's Complaint.

ground at the masters degree level," a qualification both men supposedly had. (Compl., ¶ 50.) Ms. O'Hara later learned that this statement regarding the men's qualifications was not true.

At a meeting with the search committee on May 17, 1999, Plaintiff expressed her belief that she had been excluded from consideration because of her gender. After that meeting, the search was re-opened, but this time, the job description was re-written to exclude ABD-level candidates. Again, Plaintiff was not interviewed and her application was formally rejected on June 1. One of the male candidates who had declined the position previously then accepted it.

Ms. O'Hara contacted Helen Soltis, the University's Social Equity Officer, who reviewed the job description and told Ms. O'Hara she should have been considered for the opening. Plaintiff was later told by the Dean of the Business College that "he believed it was legitimate for the University to make employment decisions based on gender." (Compl., ¶ 67.) Ms. O'Hara resigned from her position as an instructor on July 23, 1999, telling Ms. Soltis that she was resigning because of gender discrimination.

### B. *Procedural History*

Ms. O'Hara satisfied all the procedural and administrative requirements by filing a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 300 days of the last discrimination she experienced; she received a Notice of Right to Sue by the Department of Justice on July 19, 2000, and filed

suit in this Court on August 4, 2000, within 90 days of receiving the Right to Sue Notice.[2] (Compl., ¶ 2.) Ms. O'Hara's complaint includes four counts, three of which are against the University. In Count I, Plaintiff alleges gender discrimination under Title VII; in Count II, gender discrimination under Section 1983; and in Count IV, violation of Plaintiff's First and Fourteenth Amendment rights by the University and certain individual Defendants. As the cumulative result of these actions by the University and the individual Defendants, Ms. O'Hara claims she suffered lost wages and benefits, anxiety, loss of reputation, loss of career opportunities, emotional distress, humiliation and inconvenience. (Compl., ¶¶ 80, 91, 102, 113.) In compensation, she seeks an appropriate tenure track position with all benefits incident thereto; back wages for the position she was not offered; front pay if placement in a tenure track position is not feasible; compensatory damages; punitive damages against the University under Title VII; punitive damages against the Individual Defendants under Section 1983; an injunction against all Defendants from further discrimination or retaliation in any manner prohibited by Title VII or Section 1983; and attorneys' fees and costs of litigation. (Compl., ¶ 113.)

The University subsequently filed a Partial Motion to Dismiss on September 20, 2000. ("Motion to Dismiss," Docket No. 12). In the motion, the University claims it is immune from punitive damages under Title VII and from suit for monetary damages under section 1983. (Brief in Sup-

**2.** In addition to Indiana University, Ms. O'Hara also sued Linda Szul, Assistant Chair of the Department; William McPherson, a faculty member in the Department; Virginia Hemby, a faculty member and Chair of the search committee; Wayne Moore, Chair of the Department; Helen Soltis; and Robert

Camp, Dean of the Eberly College of Business (collectively, the "Individual Defendants.") Each Individual Defendant is sued in his or her individual capacity and is alleged to be a "state actor" within the meaning of § 1983. (Compl., ¶¶ 9–15.) The Individual Defendants are not party to this Motion to Dismiss.

port of Partial Motion to Dismiss, "Def.'s Brief in Support," Docket No. 13, at 1.)

Counts I and II are discussed in more detail below. Count III of the Plaintiff's Complaint is brought only against the Individual Defendants for gender discrimination violations of Plaintiff's rights under the Fourteenth Amendment and 42 U.S.C. § 1983. (Compl., ¶¶ 92–102.) The Individual Defendants have not asked that this claim be dismissed and therefore Count III is not addressed. Count IV is brought against the University and the Individual Defendants for retaliation against Plaintiff for exercise of her right to speak on matters of public concern under the First and Fourteenth Amendments to the United States Constitution. (Compl., ¶¶ 103–113.) The University does not seek to have this claim dismissed and it is not addressed below.

## II. *STANDARD OF REVIEW*

Defendant University does not identify its motion as arising under Fed. R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction, Rule 12(b)(2) for lack of jurisdiction over the person, Rule 12(b)(6) for failure to state a claim, or any other basis. Moreover, Defendants had already filed a joint Answer to the Complaint prior to filing this Motion; theoretically, therefore, under Fed.R.Civ.P. 12(c), this motion properly should have been characterized as a Motion for Judgment on the Pleadings.[3] *Turbe v. Gov't of the Virgin Islands,* 938 F.2d 427, 428 (3d Cir.1991). Defendants undefined motion will be treated as a motion for judgment on the pleadings, which is analyzed under the same standard as a motion to dismiss. *Turbe, id.; DeBraun*

*v. Meissner,* 958 F.Supp. 227, 229 (E.D.Pa. 1997).

In deciding a motion to dismiss, all factual allegations and all reasonable inferences therefrom must be accepted as true and viewed in a light most favorable to the plaintiff. *Colburn v. Upper Darby Twp.,* 838 F.2d 663, 665–666 (3d Cir.1988). In ruling on a motion to dismiss, the court must decide whether there are sufficient facts pled to determine that the complaint is not frivolous, and to provide the defendants with adequate notice to frame an answer. *Id.* at 666. A motion to dismiss will be granted only if it appears that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Jurisdiction in this Court is invoked pursuant to Title VII, 42 U.S.C. § 2000(e)–5(f)(3), 42 U.S.C. § 1983, and 28 U.S.C. § 1331.

## III. *LEGAL ANALYSIS*

### A. *Count 1—Violation of Title VII by the University*

Based on explicit statements by several members of the search committee that the department needed to hire a male professor "for image reasons," the statement by the Business College Dean that he believed it was legitimate to make employment decisions based on gender, the University's failure to interview Ms. O'Hara although she was qualified and ranked as one of the top three candidates for the vacant positions, and revision of the job description to exclude her from further consideration, Plaintiff claims that the Uni-

---

**3.** *"Motion for Judgment on the Pleadings.* After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion

shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(c). Neither party has presented materials outside the pleadings.

versity violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1).[4] She further claims these acts were intentional and done with reckless disregard for her right to be considered for the positions without regard to her gender. (Compl., ¶¶ 70–80.)

In her Complaint, Ms. O'Hara claimed to seek punitive damages against the University for violation of Title VII. The University claims, as discussed in more detail below in Section B, that it is a public employer and a component of the State System of Higher Education, a state agency of the Commonwealth of Pennsylvania. Therefore, it is immune from suit for punitive damages under Title VII, 42 U.S.C. § 1981a(b)(1).[5] (Def.'s Brief in Support at 2.) Plaintiff concedes that punitive damages are not available against the University under Title VII and voluntarily withdraws this aspect of her claim for relief. (Plaintiff's Brief in Opposition to Defendant's Partial Motion to Dismiss, "Plf.'s Brief in Opp.," Docket No. 15, at 3.) Therefore, Defendant's Motion as it relates to Plaintiff's claim for punitive damages under Title VII is denied as moot.

### B. Count II—Violation of Section 1983 by the University

Count II is based on the same actions of the search committee, i.e., refusing to interview her, re-writing the job description to exclude Ms. O'Hara from further consideration, and the statements by the search committee members and Dean regarding the University's plan to fill the positions with male candidates. These intentional acts deprived her, under color of state law, of her constitutional right to equal protection under the Fourteenth Amendment to the Constitution of the United States and in violation of 42 U.S.C. § 1983.[6] (Compl., ¶¶ 81–91.)

Defendant claims that this Count should be dismissed because "it is well-settled" that as a component of the State System of Higher Education, Indiana University of Pennsylvania is immune from suit under the Eleventh Amendment of the United States Constitution. (Defendant's Reply to Plf.'s Brief in Opp., "Def.'s Reply Brief," Docket No. 16, at 1–2.) Plaintiff argues that as "a political subdivision" of the Commonwealth, the University is "subject to suit under Section 1983 as long as the plaintiff identifies a government custom, policy or practice [that] causes the alleged violation." (Plf.'s Brief in Opp. at 3.) Plaintiff alleges that the University has a policy, custom or practice of favoring male candidates over female candidates when selecting employees for tenure-track teaching positions.

---

**4.** "It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

**5.** "A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1).

**6.** Section 1983 provides in pertinent part, "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983.

1. *The Eleventh Amendment*

█ The Eleventh Amendment to the constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.

█ In *Hans v. Louisiana,* 134 U.S. 1, 9, 10 S.Ct. 504, 33 L.Ed. 842 (1890), the Supreme Court interpreted this amendment as including the proposition that a federal court cannot entertain a suit brought by a citizen of a state against his own state. The Court subsequently held that the Eleventh Amendment bars any such action in federal court when "the state is the real, substantial party at interest" and the relief sought will operate against the state. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 101, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), *rev'g* and *remand'g* 673 F.2d 647 (3d Cir. 1982) (en banc). Exceptions to this general rule include those instances in which the state has consented to the suit, i.e., has unequivocally waived its sovereign immunity,[7] or Congress has overturned such immunity in enacting specific legislation. *Pennhurst,* 465 U.S. at 99, 104 S.Ct. 900; *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board,* 527 U.S. 666, 670, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999). The Commonwealth of Pennsylvania has not waived its immunity in § 1983 civil rights cases (42 Pa.C.S.A. § 8521) and Congress did not abrogate state immunity in general in enacting civil rights legislation, including § 1983. *Quern v. Jordan,* 440 U.S. 332, 342, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

█ According to Defendant, the threshold question in considering the Motion to Dismiss is whether the University is an agency of the Commonwealth protected by the Eleventh Amendment. If an agency's powers are "distinct and separate from those of the state," it is not entitled to Eleventh Amendment sovereign immunity, but if it functions as an "arm" or "alter ego" of the state, it is entitled to such immunity. *Wynne v. Shippensburg University of Pennsylvania,* 639 F.Supp. 76, 82 (M.D.Pa.1985).

Defendant asserts that by statute, Indiana University of Pennsylvania, one of the named State Universities, is immune from suit under the Eleventh Amendment. (Def.'s Reply Brief at 1.) I agree with Defendant's position, including its assessment that this point is "well-settled." In *Skehan v. State System of Higher Educ.,* 815 F.2d 244 (3d Cir.1987), the Third Circuit Court of Appeals analyzed in detail the background of 24 P.S. §§ 20–2001 *et seq.,* the statute which, in 1983, converted fourteen former Pennsylvania state colleges into universities and established

---

**7.** Pennsylvania waives the immunity of the Commonwealth and its officials only in nine narrow categories of negligence: 1) operation of a vehicle, 2) medical-professional liability, 3) care, custody, or control of personal property, 4) a dangerous condition of Commonwealth real estate, highways and sidewalks, 5) a dangerous condition of Commonwealth highways caused by natural elements, 6) care, custody or control of animals, 7) liquor store sales, 8) National Guard activities, and 9) toxoids and vaccines. 42 Pa.C.S.A. § 8522. *See, Brungard v. Mansfield State College, Pa.,* 419 A.2d 1171 (1980), holding that the doctrine of sovereign immunity was not a defense to action against Mansfield State College for injuries suffered in a laboratory explosion allegedly caused by the negligence of the college and its professor.

their status as components of the State System of Higher Education ("SSHE"). The statute provides, in relevant part:

Subject to the regulatory powers conferred by law upon the State Board of Education, there is hereby established a body corporate and politic constituting a public corporation and government instrumentality which shall be known as the State System of Higher Education, independent of the Department of Education, hereinafter referred to as the system, which shall consist of the following institutions and such other institutions, presently existing or newly created, as may hereafter be admitted by the board in concurrence with other agencies as required by law:

(1) Bloomsburg State College, (2) California State College, (3) Cheyney State College, (4) Clarion State College, (5) East Stroudsburg State College, (6) Edinboro State College, (7) Indiana University of Pennsylvania, (8) Kutztown State College, (9) Lock Haven State College, (10) Mansfield State College, (11) Millersville State College, (12) Shippensburg State College, (13) Slippery Rock State College, and (14) West Chester State College.

24 P.S. § 20–2002–A(a).

In *Skehan,* a former non-tenured economics professor at Bloomsburg State College first sued the College when his annual contract was not renewed for the following academic year and he was dismissed soon thereafter, allegedly in part for his political activities and criticism of the College administration. Although he successfully sued for reinstatement on the grounds that his dismissal violated his Fourteenth Amendment due process rights because he did not receive a pre-termination hearing, he was unsuccessful in his claims for back pay and benefits because the district court held that such relief was barred by the Eleventh Amendment. *Skehan* 815 F.2d at 246, *citing Skehan v. Board of Trustees of Bloomsburg State College,* 538 F.2d 53, 63 (3d Cir.), *cert. denied,* 429 U.S. 979, 97 S.Ct. 490, 50 L.Ed.2d 588 (1976). Skehan then sued the State System of Higher Education for the same relief. The district court granted a motion by SSHE for judgment on the pleadings. On appeal, the Third Circuit concluded that the trial court had properly decided that "the State System is, effectively, a state agency and therefore entitled to the protection of the Eleventh Amendment in the federal court." *Skehan,* 815 F.2d at 249.

The *Skehan* Court applied the test originally defined in *Urbano v. Board of Managers of New Jersey State Prison,* 415 F.2d 247, 250–51 (3d Cir.1969), *cert. denied,* 397 U.S. 948, 90 S.Ct. 967, 25 L.Ed.2d 128 (1970), as the appropriate criteria for district courts to apply in determining whether an agency possesses sufficient state attributes to warrant the protections of the Eleventh Amendment:

Local law and decisions defining the status and nature of the agency involved in its relation to the sovereign are factors to be considered, but only one of a number that are of significance. Among the other factors, no one of which is conclusive, perhaps the most important is whether, in the event plaintiff prevails, the payment of the judgment will have to be made out of the state treasury; significant here also is whether the agency has the funds or the power to satisfy the judgment. Other relevant factors are whether the agency is performing a governmental or proprietary function; whether it has been separately incorporated; the degree of autonomy over its operations; whether it has the power to sue and be sued and to enter into contracts; whether its property is immune from state taxation, and wheth-

er the sovereign has immunized itself from responsibility for the agency's operations.

*Skehan,* 815 F.2d at 247.

While the court analyzed each of these criteria in detail, as noted above, the factor which was "perhaps the most important is whether . . . the payment of the judgment will have to be made out of the state treasury." The statute establishing the State Universities further provides that "as successor institutions to the State Normal Schools, appropriations for their operation are ordinary expenses of government, requiring only a majority vote of each House of the General Assembly." 24 P.S. §§ 20–2002–A(b). In both *Skehan* and in one of the first federal district cases decided after creation of the SSHE, the courts concluded that although the state universities were authorized to accept funds from "foundations, corporations, or any other source" (24 P.S. § 20–2010–A(11)), any judgment rendered against any of the universities within the State System

of Higher Education "will result in a drain upon the treasury of Pennsylvania since the state has undertaken primary responsibility for funding these entities." *Wynne,* 639 F.Supp. at 80, *citing* § 20–2002–A(b).

*Skehan* was by no means the first or last Third Circuit and Pennsylvania case to conclude that the State System of Higher Education and its fourteen component universities, including Defendant, enjoy immunity under the Eleventh Amendment.[8] The Third Circuit has specifically considered whether Indiana University of Pennsylvania is an arm of the State in the context of a suit brought under § 1983. In *Roseman v. Hassler,* 382 F.Supp. 1328 (W.D.Pa.1974), *aff'd,* 520 F.2d 1364 (3d Cir.1975), *cert. denied,* 424 U.S. 921, 96 S.Ct. 1128, 47 L.Ed.2d 329 (1976), the court concluded that it had no jurisdiction over the University which was not a person under the Civil Rights Act, but rather a branch of the state government of Penn-

8. *See,* for example, *Lewis v. Kelchner* 658 F.Supp. 358 (M.D.Pa.1986) (because State System is a state agency, Eleventh Amendment bars action against it in federal court); *Lach v. Robb,* 679 F.Supp. 508, 513 (W.D.Pa.), *aff'd* 857 F.2d 1464 (3d Cir.1988) (because the SSHE is a state agency immune from suit in federal court under the Eleventh Amendment, "it follows that the constituent parts of the State System, the state universities [including California State University], also share Eleventh Amendment immunity"); *Layser v. Morrison,* 935 F.Supp. 562 (E.D.Pa. 1995) (West Chester State University's status as a state agency with sovereign immunity precludes plaintiff from asserting a § 1983 claim against it); *Seybert v. West Chester University,* 83 F.Supp.2d 547, 553 (E.D.Pa.2000) (as a "member Institution" of the SSHE, West Chester University is immune from suit); *Finkelstein v. Shippensburg State College,* 29 Pa.Cmwlth. 373, 370 A.2d 1259 (1977) (state college was state agency, owned and operated by Commonwealth); *Williams v. West Chester State College,* 29 Pa.Cmwlth. 240, 370 A.2d

774 (1977) (same as *Finkelstein* ); *Pa. Industries for the Blind and Handicapped v. Pa. State System of Higher Education,* 87 Pa. Cmwlth. 1, 485 A.2d 1233 (1985) (concluding that changes in the status of former normal schools to state colleges did not relieve them from abiding by state bidding requirements for goods and services); and *Dynamic Student Services v. SSHE,* 548 Pa. 347, 697 A.2d 239 (1997) (Millersville and West Chester State Universities are state agencies subject to disclosure requirements of state Right–to–Know Act).

Other Pennsylvania schools of higher education, such as Temple University, the University of Pittsburgh, and Penn State University, are considered "state-related institutions" and have not been granted Eleventh Amendment immunity. *See Kovats v. Rutgers,* 822 F.2d 1303, 1312 (3d Cir.1987); Temple University Commonwealth Act, 24 P.S. §§ 2510–1 *et seq.;* University of Pittsburgh Commonwealth Act, 24 P.S. §§ 2510–201 *et seq.;* Lincoln University Commonwealth Act, 24 P.S. §§ 2510–401 *et seq.*

sylvania.[9] The University was established as part of the Pennsylvania Department of Education (24 P.S. § 20–2002(14)) and was not a separately chartered corporation but rather a subdivision of the Commonwealth Department of Education from its founding. *Roseman*, 382 F.Supp. at 1334. The University is not described by statute as being a body corporate and politic with power to sue and be sued. *Id.* The court concluded that "considering all the other provisions of the law indicating that the institution is an integral part of the state government ... [the University] is included in the sovereign immunity of the Commonwealth." *Id.* at 1334–35.

Plaintiff argues that because the SSHE and its components are established as "independent of the Department of Education" and the University is not identified as the State or an arm of the State, Defendant should not be protected by the Eleventh Amendment. (Plf.'s Brief in Opp. at 4, *citing* 24 P.S. § 20–2000–A(a).) This argument was specifically raised and rejected by the court in *Wynne*. As the court there pointed out "Plaintiff has neglected to include language from the same statute .. which is less supportive of [her] position." The portion of the statute cited by Ms. O'Hara describes the State System of Higher Education as "a government instrumentality." *Wynne*, 639 F.Supp. at 79. I find no reason to disagree with the conclusions of the courts in *Skehan, Wynne* and *Roseman* that the State System of Higher Education and its fourteen constituent State Universities, including the Defendant, are entitled to the protection of the Eleventh Amendment in this court.

1. *The "Custom, Policy or Practice" Exception to Eleventh Amendment Immunity*

■ Plaintiff has offered no statutory or case law to contradict the body of law discussed above. However, she claims that "contrary to Defendant's contention, political subdivisions *are* persons subject to suit under Section 1983 as long as the plaintiff identifies a government custom, policy or practice [which] causes the alleged violation." (Plf.'s Brief in Opp. at 3.) Specifically, she refers to her allegation that "Defendant has a policy, custom or practice of favoring male candidates over female candidates when selecting employees for tenure-track positions." (Compl., ¶ 86). Such a custom, policy or practice, Plaintiff asserts, creates an exception to the general rule of sovereign immunity for state agencies that violate § 1983.

In making this argument, Ms. O'Hara relies on *Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), for the proposition that a state agency

can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where ... the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "per-

---

**9.** Although *Roseman* was heard before the 1983 enactment of modifications to the statute, the state school in Indiana, Pennsylvania, has apparently always been referred to as a University, rather than a State College like the other 13 schools. *See* 24 P.S. §§ 2510–101 *et seq.* Plaintiff has not pointed to, and independent research as to the statutes cited in the *Roseman* analysis has not revealed, any substantive changes in the law which would affect the conclusions of the *Roseman* court regarding the University's corporate structure, administration, and governance. *Roseman*, 382 F.Supp. at 1333–35.

son," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decision-making channels.

*Monell,* 436 U.S. at 690–691, 98 S.Ct. 2018.

Plaintiff's reliance on *Monell* is, unfortunately, misplaced. The Supreme Court has held that "neither a state nor its officials acting under their official capacities are 'persons' under § 1983." *Will,* 491 U.S. at 71, 109 S.Ct. 2304. In contrast, the Court has found that municipal corporations and similar governmental entities are "persons" subject to suit. As the Court wrote in *Will,* "it does not follow that if municipalities are persons then so are states. States are protected by the Eleventh Amendment while municipalities are not, and we consequently limited our holding in *Monell* to local government units which are not considered part of the State for Eleventh Amendment purposes." *Will,* 491 U.S. at 70, 109 S.Ct. 2304 (citation and quotation marks omitted). *See* also, *Vermont Agency of Natural Resources v. U.S.,* 529 U.S. 765, 780–81, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000), noting, "We must apply . . . our longstanding interpretive presumption that 'person' does not include the sovereign. . . . [This] is, of course, not a 'hard and fast rule of exclusion,' but it may be disregarded only upon some affirmative showing of statutory intent to the contrary" (citations omitted). Plaintiff cites no cases from this Circuit or elsewhere for the premise that the scope of *Monell* has been expanded to include an entity which is an arm of the State rather than a municipality, local government or an agency thereof. Because the State System of Higher Education and its component universities are an arm of the State, not of any municipality or local government, the "custom, policy and practice" exception of *Monell* is inapplicable.

Defendant's motion to dismiss Count II of the Complaint is therefore granted.

### ORDER OF COURT

And now, this **26th** day of March, 2001, after careful consideration and for the reasons set forth in the Opinion accompanying this Order, it is ordered that the Motion for Judgment on the Pleadings (styled as a Motion to Dismiss) by Defendant Indiana University of Pennsylvania (Docket No. 12) is denied in part as moot to the extent it seeks to dismiss Plaintiff's demand for punitive damages under Title VII (gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1)), which demand has been withdrawn by Plaintiff, and granted as to Count II of the Complaint (gender discrimination in violation of 42 U.S.C. § 1983).