**SKEHAN, Dr. Joseph T., Appellant,**

v.

**STATE SYSTEM OF HIGHER EDUCATION.**

No. 86–1531.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) March 5, 1987.

Decided March 18, 1987.

Cletus P. Lyman, Lyman & Ash, Philadelphia, Pa., for appellant.

LeRoy S. Zimmerman, Atty. Gen. by Calvin R. Koons, Deputy Atty. Gen., John G. Knorr, III, Sr. Deputy Atty. Gen., Andrew S. Gordon, Chief Deputy Atty. Gen., Chief, Litigation Section, Office of Atty. Gen., Harrisburg, Pa., for appellee.

Before: GIBBONS, Chief Judge, SEITZ and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

Dr. Joseph T. Skehan, formerly an untenured associate professor of economics, again seeks back pay from an agency of the Commonwealth of Pennsylvania relating to an improper termination of his employment with Bloomsburg State College seventeen years ago. Skehan's previous efforts to obtain this retrospective financial relief in the federal courts have been thwarted by the interposition of the eleventh amendment.[1] Unsuccessful in his back pay claims against Bloomsburg State College, he has now sued an instrumentality known as the Pennsylvania State System of Higher Education. In the district court State System asserted, *inter alia,* its sovereign immunity under the eleventh amendment as a complete defense. The court agreed, denied Skehan's motion for partial summary judgment, and granted State System's motion for judgment on the pleadings. Skehan has appealed. We now affirm.

### I.

A partial account of the Skehan saga may be found in *Skehan v. Board of Trustees of Bloomsburg State College,* 669 F.2d 142 (3d Cir.), *cert. denied,* 459 U.S. 1048, 103 S.Ct. 468, 74 L.Ed.2d 617 (1982). Briefly, Bloomsburg notified Skehan, appointed as a non-tenured associate professor of economics at the college in January 1969, that his contract would not be renewed beyond the 1970–71 academic year. Skehan protested on the grounds that the nonrenewal decision was caused in large part by his opinion on national politics and college administration.

In October 1970, Skehan was suspended and subsequently dismissed on the grounds that he failed to teach classes as scheduled by the college. He filed suit in federal court alleging that both the nonrenewal decision and his dismissal were in retaliation for his political activities, a violation of his first amendment rights. He also alleged that he was denied hearings on these

---

1. This court is no stranger to Dr. Skehan's litigation over his termination as a professor at Bloomsburg State College. *See Skehan v. Board of Trustees of Bloomsburg State College,* 501 F.2d 31 (3d Cir.1974), *vacating and remanding* 358 F.Supp. 430 (M.D.Pa.1973), *vacated and remanded,* 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975); *Skehan v. Board of Trustees of Bloomsburg State College,* 538 F.2d 53 (3d Cir. 1976) (in banc), *on remand from* 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975), *cert. denied,* 429 U.S. 979, 97 S.Ct. 490, 50 L.Ed.2d 588 (1976); *Skehan v. Board of Trustees of Bloomsburg State College,* 590 F.2d 470 (3d Cir.1978), *aff'g in part, rev'g in part* 436 F.Supp. 657 (M.D.Pa.1977), *cert. denied,* 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 41 (1979); *Skehan v. Board of Trustees of Bloomsburg State College,* 669 F.2d 142 (3d Cir.1982), *aff'g* 501 F.Supp. 1360 (M.D.Pa. 1980), *cert. denied,* 459 U.S. 1048, 103 S.Ct. 468, 74 L.Ed.2d 617 (1982).

Skehan has sought relief in the Pennsylvania state courts as well. In *Skehan v. Bloomsburg State College,* 94 Pa.Cmwlth. 252, 503 A.2d 1000 (1986), the court held that his claim filed December 31, 1980 was barred by the six-year statute of limitations. Presently pending in the state court system are *Commonwealth ex rel. Bloomsburg v. Porter and Skehan,* 1970 Oct. Term No. 296 (C.C.P. Columbia County); *Skehan v. President and Board of Trustees of Bloomsburg State College,* No. 998 C.D. 1978 (Pa.Commw.); *Skehan v. President and Board of Trustees of Bloomsburg State College,* No. 1552 C.D. 1978 (Pa.Commw.).

decisions in violation of his fourteenth amendment right to due process. The federal courts ultimately rejected his first amendment claim, but the district court held that Skehan's dismissal violated due process because he was not given a hearing. *Skehan v. Board of Trustees of Bloomsburg State College*, 358 F.Supp. 430 (M.D.Pa.1973), *vacated*, 501 F.2d 31 (1974), *vacated and rem'd*, 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975). On remand the district court again concluded that the college violated Skehan's due process right by failing to afford him a hearing on the nonrenewal decision. *Skehan v. Board of Trustees of Bloomsburg State College*, 431 F.Supp. 1379, 1393 (M.D.Pa. 1977).

The district court ordered Bloomsburg to reinstate Skehan to the status he held on October 15, 1970, after he was suspended but before he was dismissed. *Skehan v. Board of Trustees of Bloomsburg State College*, 436 F.Supp. 657, 664 (M.D.Pa. 1977), *aff'd in part, remanded in part*, 590 F.2d 470 (3d Cir.1978), *cert. denied*, 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 41 (1979). The district court also held that the college must afford Skehan a hearing on both the nonrenewal decision and on his dismissal, in that order. *Id.* at 664, 668–69.

In sum, Skehan has received limited equitable relief, prospective or front pay pending his due process hearings, and attorney's fees. He has not received back pay or benefits, however, because this court ruled that such relief was barred by the eleventh amendment. *Skehan v. Board of Trustees of Bloomsburg State College*, 538 F.2d 53, 63 (3d Cir.) (in banc), *cert. denied*, 429 U.S. 979, 97 S.Ct. 490, 50 L.Ed.2d 588 (1976). He claims that this relief was only half a loaf, and that he is now entitled to the other half—back pay from the date he was first dismissed until he started to receive front pay pending the due process hearings. Undaunted by this court's ruling that the eleventh amendment precludes him from proceeding against Bloomsburg State College, he now seeks to obtain from the State System of Higher Education the financial relief that was denied him in his prior actions.

In his present action, Skehan alleges that as an "employee under contract" he was "wronged" by Bloomsburg as set forth in a prior federal court action against the college and some of its officials. He contends that State System, which was created by statute in 1983, succeeds to the obligations, but not the eleventh amendment immunity, of the college. Skehan therefore claims that he is entitled to back pay and fringe benefits, together with attorney's fees, for actions taken by Bloomsburg thirteen years before the State System of Higher Education came into being.

## II.

■ We make clear at the outset that the issue before us is not, as urged by Skehan, whether a municipality may be subject to an action brought under 42 U.S.C. § 1983. *See Monnell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). We face a quite different question—whether State System is a Pennsylvania instrumentality entitled to the protection of the eleventh amendment. Because this issue involves the interpretation of the federal Constitution, it is a question of law subject to plenary review. *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101–02 (3d Cir.1981).

The eleventh amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. The interpretation of this amendment has been expanded to include the notion that a federal court cannot entertain a suit brought by a citizen of a state against his own state. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

This court is no stranger to eleventh amendment litigation. Capping a series of cases originating here, the Supreme Court has held that the eleventh amendment bars

an action in federal court when " 'the state is the real, substantial party at interest' and any relief will effectively run against the state." *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) (citations omitted), *rev'g and remand'g* 673 F.2d 647 (3d Cir.1982) (in banc). *See also Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981), *rev'g and remand'g* 612 F.2d 84 (3d Cir.1979) (in banc). Although a state can consent to suit against it in federal court, *see, e.g., Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the Commonwealth of Pennsylvania has not waived its rights under the eleventh amendment. The statutory scheme established by Pennsylvania to govern actions against Commonwealth parties provides in pertinent part that: "[n]othing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States." 42 Pa.Stat.Ann. § 8512(b). Our inquiry here is thus quite limited. We must decide a narrow question: whether Pennsylvania "is the real, substantial party in interest" when an action for back pay damages is asserted against the State System of Higher Education.

To guide our decision, this court has suggested criteria to consider in determining whether an agency possesses sufficient state attributes to warrant the protections of the eleventh amendment:

> [L]ocal law and decisions defining the status and nature of the agency involved in its relation to the sovereign are factors to be considered, but only one of a number that are of significance.
>
> Among the other factors, no one of which is conclusive, perhaps the most important is whether, in the event plaintiff prevails, the payment of the judg-

ment will have to be made out of the state treasury; significant here also is whether the agency has the funds or the power to satisfy the judgment. Other relevant factors are whether the agency is performing a governmental or proprietary function; whether it has been separately incorporated; the degree of autonomy over its operations; whether it has the power to sue and be sued and to enter into contracts; whether its property is immune from state taxation, and whether the sovereign has immunized itself from responsibility for the agency's operations.

*Urbano v. Board of Managers of New Jersey State Prison,* 415 F.2d 247, 250–51 (3d Cir.1969), *cert. denied,* 397 U.S. 948, 90 S.Ct. 967, 25 L.Ed.2d 129 (1970) (citations omitted); *see also Blake v. Kline,* 612 F.2d 718, 722 (3d Cir.1979), *cert. denied,* 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1112 (1980); *Braderman v. Pennsylvania Housing Finance Agency,* 598 F.Supp. 834, 836 (M.D.Pa.1984). We conclude that the district court correctly applied the *Urbano* criteria and properly held that State System shares in the Commonwealth's eleventh amendment immunity.[2]

### III.

■ Our analysis of the *Urbano* criteria begins with the language of the statute that created the State System of Higher Education in 1983:

> Subject to the regulatory powers conferred by law upon the State Board of Education, there is hereby established a body corporate and politic constituting a public corporation and government instrumentality which shall be known as the State System of Higher Education, independent of the Department of Education, hereinafter referred to as the system, which shall consist of the following institutions and such other institutions, presently existing or newly created, as

---

**2.** Two other district courts have so suggested. *See Lewis v. Kelchner,* 658 F.Supp. 358 (M.D. Pa.1986) (because State System is a state agency, eleventh amendment bars action against it in federal court); *Wynne v. Shippensburg Universi-* *ty of Pennsylvania, et al.,* 639 F.Supp. 76 (M.D.Pa.1985) (Shippensburg University of Pennsylvania shares Commonwealth's eleventh amendment immunity notwithstanding its incorporation into State System).

may hereafter be admitted by the board in concurrence with other agencies as required by law....

24 Pa.Stat.Ann. § 20–2002–A(a). Although the State System does have a separate existence as a corporation, this factor alone, as demonstrated by the statutory language, does not disassociate it from the exercise of governmental functions and governmental objectives. The statute defines, in pertinent part, the purposes and powers of the system:

The State System of Higher Education shall be part of the Commonwealth's system of higher education. Its purpose shall be to provide high quality education at the lowest possible cost to the students. The primary mission of the system is the provision of instruction for undergraduate and graduate students to and beyond the master's degree in the liberal arts and sciences and in applied fields, including the teaching profession.

24 Pa.Stat.Ann. § 20–2003–A(a). Providing education has long been recognized as a function of state government. *See* Act of July 2, 1862 (Morrill Act), 12 Stat. 503 (1862) (codified at 7 U.S.C. §§ 301–308) (land grants to states to establish colleges); *see also Rupe v. State Public School Building Authority,* 245 F.Supp. 726, 730–31 (W.D.Pa.1965). State System is therefore distinguishable from those entities which, although state related, exercise proprietary functions.

Skehan argues that in addition to state appropriations, State System receives independent sources of funding. This court, however, has held that "for eleventh amendment purposes, the nature of the state's obligations to contribute may be more important than the size of the contribution." *Blake v. Kline,* 612 F.2d 718, 723 (3d Cir.1979), *cert. denied,* 449 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1112 (1980). The State System is "part of the Commonwealth's system of higher education," 24 Pa.Stat.Ann. § 20–2003–A(a), and its purpose is to provide "high quality education at the lowest possible cost to the students." *Id.* Appropriations for the operation of the constituent institutions are described as "ordinary expenses of government, requir-

ing only a majority vote of each House of the General Assembly." 24 Pa.Stat.Ann. § 20–2002–A(b). Moreover, State System has "the same preferred status for appropriations as is enjoyed by its constituent institutions," including Bloomsburg College. *Id.*

State System is not autonomous but is subject to substantial state supervision and control. The governing body of sixteen members is comprised of two state officials and fourteen others appointed by the governor with the advice and consent of the senate. Its activities are subject to an annual audit by the Department of the Auditor General. The constituent units of the system are required to submit an annual report to the governor and the Appropriation and Education committees of the Pennsylvania senate and house of representatives. State System is required to abide by those provisions of the administrative code applicable to the Commonwealth and its agencies relating to the purchase of supplies, and to product and service contracts from non-profit agencies. *See* 24 Pa.Stat. Ann. §§ 20–2004–A(a), 20–2015–A, 20–2017–A; *see also Pennsylvania Industries For The Blind and Handicapped v. Commonwealth State System of Higher Education,* 87 Pa.Commw. 1, 485 A.2d 1233 (1985).

Although there is no specific provision in the State System of Higher Education Act relating to sovereign immunity or immunity from taxation, it is clear that these immunities, which apply to the Commonwealth and its property, remain in place. The Act provides:

All powers, rights, privileges, duties and obligations, statutory, contractual or otherwise, of the institutions or their predecessors and their respective council of trustees and officers, heretofore existing and not otherwise changed or repealed by this act, shall continue in full force and effect.

24 Pa.Stat.Ann. § 20–2016–A. The Pennsylvania legislature has reaffirmed the doctrine of sovereign immunity in 1 Pa.Cons. Stat.Ann. § 2310. Pennsylvania courts,

prior to the creation of the State System, had held the doctrine applicable to bar suits brought against state colleges. *See, e.g., Finkelstein v. Shippensburg State College*, 29 Pa.Commw. 373, 374, 370 A.2d 1259, 1260 (1977). There is no express legislative waiver of sovereign immunity as to the State System, and the language of 24 Pa.Stat.Ann. § 20–2016–A preserves the immunity intact. *See Roberts v. Witman*, No. 1311 Civil of 1986, slip op. at 3–4 (C.C.P.Monroe County, Pa. Dec. 11, 1986).

Similarly, Pennsylvania courts have held that real estate owned by the Commonwealth is not subject to taxation by political subdivisions in the absence of express statutory authority. *See Commonwealth v. Dauphin County*, 335 Pa. 177, 6 A.2d 870 (1939); *Southeastern Pennsylvania Transportation Authority v. Board of Assessment and Revision of Taxes*, 13 Pa. Commw. 207, 319 A.2d 10 (1974). There is no express statutory waiver of this immunity, and it therefore appears that, pursuant to 24 Pa.Stat.Ann. § 20–2016–A, immunity from local taxation of real property applies to the State System.

Having considered in detail the *Urbano* factors, we conclude that the State System is, effectively, a state agency and therefore entitled to the protection of the eleventh amendment in the federal courts.

### IV.

We have addressed the eleventh amendment in depth because this was the sole issue considered by the district court. Accordingly, we do not meet other important questions presented by the State System in defense in the district court.

The judgment of the district court will be affirmed.