**In re DECALCOMANIA MFG. CORPORATION, Debtor.**

**DECALCOMANIA MFG. CORPORATION, Plaintiff,**

v.

**CITY OF CAMDEN, Defendant.**

**Bankruptcy No. 90–11422.**
**Adv. No. 90–1107.**

United States Bankruptcy Court,
D. New Jersey.

Oct. 19, 1990.

Kasen, Kasen & Braverman by Robert N. Braverman, Cherry Hill, N.J., for the debtor.

M. Lou Garty, Asst. City Atty., City of Camden, Camden, N.J.

ROSEMARY GAMBARDELLA, Bankruptcy Judge.

Before this Court are: (1) Debtor-plaintiff Decalcomania Manufacturing Corporation's Verified Complaint for judgment avoiding the transfer of property as a fraudulent conveyance and vesting possession and title in the subject property in the debtor, and (2) defendant City of Camden's

Motion to Dismiss the adversary proceeding. The following constitutes this Court's findings of fact and conclusions of law.

The debtor-in-possession, Decalcomania Manufacturing Corporation (hereinafter "Debtor" or "Decalcomania"), owned the land and building located at 600 Mechanic Street, Camden, New Jersey at which it operated its business consisting of the manufacturing of screen printed decals, labels, and related printed products. Prior to the filing of this Chapter 11 case, as a result of a real estate tax delinquency in the amount of $49,101.07, the defendant City of Camden instituted an In Rem Tax Foreclosure Proceeding against the debtor in the Superior Court of New Jersey, Chancery Division, Camden County, bearing Docket No. F–6675–89. Pursuant to the requirements of the In Rem Tax Foreclosure Act, N.J.S.A. 54:5–104.29, *et seq.*, the City provided notice to the debtor-in-possession of the pending foreclosure action. Notice was served upon Decalcomania by regular and certified mail, publication, and posting. Decalcomania failed to answer or otherwise appear in the foreclosure action and on December 27, 1989, the Superior Court entered an "In Rem Final Judgment" whereby the debtor-in-possession was "foreclosed of all prior or subsequent alienations and descents of said lands and encumbrances thereon including mortgages and leases or tenancies and that an absolute and indefeasible estate of inheritance in fee simple in aforesaid properties be vested in the Plaintiff, the City of Camden, a Municipal Corporation of the State of New Jersey." [1]

On June 4, 1990, Decalcomania Manufacturing Co. filed a Petition for Relief under Chapter 11 of the Bankruptcy Reform Act of 1978, as Amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984 and the Bankruptcy Judges, United States Trustees and Family Farmers Bankruptcy Act of 1986 ("Bankruptcy Code").

The Debtor has remained in possession of its property as a debtor-in-possession. The debtor has not operated its business at the subject premises since May 1989 prior to the filing of this case, when as a result of the In Rem Final Judgment the City of Camden took possession of the property. On June 11, 1990, Decalcomania filed with this Court the instant verified complaint seeking *inter alia* to set aside the transfer of the subject property as a result of the entry of the In Rem Final Judgment as a fraudulent conveyance under 11 U.S.C. § 548(a)(2). Decalcomania further requested that the defendant City of Camden deliver title and possession of the property back to the debtor in possession. The City of Camden on June 18, 1990 filed an Answer seeking dismissal of the complaint and on June 29, 1990 filed a motion to dismiss the adversary proceeding, asserting that, under the Eleventh Amendment doctrine of sovereign immunity, which sovereign immunity the City asserts it has not waived, this Court lacks jurisdiction to order the City to set aside the In Rem Final Judgment and order the delivery of possession and title of the subject property back to Decalcomania. By that motion the City of Camden also asserted that the plaintiff had failed to state a claim for which relief can be granted.

On July 16, 1990, the parties appeared before this Court for trial of the above matter. At trial, the parties stipulated that should the Court find that the Final Judgment in the In Rem Tax Foreclosure proceeding resulted in a "transfer" of an interest of the debtor in property within the meaning of 11 U.S.C. § 548, then Decalcomania received "less than a reasonable equivalent value in exchange for such transfer" pursuant to § 548(a)(2)(A) and that the debtor-in-possession "became insolvent as a result of such transfer" pursuant to Section 548(a)(2)(B)(i).[2] The defendant,

---

**1.** In its original complaint, the Debtor contested the sufficiency of notice to it of the entry of the In Rem Final Judgment. This claim was withdrawn by the Debtor at trial on this action.

**2.** The Court here notes that the Debtor scheduled the value of the subject property in its bankruptcy schedules at $250,000.00. The City of Camden hired Property Evaluations Co., Inc.

to appraise the fair market value of the property to determine 1990 property taxes. The appraisal performed on behalf of the City of Camden set forth a fair market value, as of August 21, 1989 at $366,200.00. (*See* Affidavit of Robert J. Burton, President of the Debtor at ¶ 2 and ¶ 3, and Exhibit "A"). The firm of Cushman & Wakefield performed an appraisal of the property for Fidelity Bank, which set forth market

City of Camden, has not filed a proof of claim in this action.

At the outset, this Court is called upon to determine whether a municipality may invoke sovereign immunity as a defense to an action brought in a federal court. Only if this inquiry is answered in the affirmative may the Court proceed to determine whether the City's immunity has been waived or abrogated.[3] The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const.Amend. XI.

Despite the amendment's language, the Supreme Court has construed it to immunize an unconsenting state "from suits brought in federal courts by her own citizens as well as by citizens of another state." *Employees of Dept. of Public Health and Welfare v. Missouri Department of Public Health and Welfare*, 411 U.S. 279, 280, 93 S.Ct. 1614, 1616, 36 L.Ed.2d 251 (1973). State agencies and state officials are entitled to immunity from suit in federal court if it is determined that the state is the real party in interest under the theory that the agency or official is the "arm" or "alter ego" of the state. *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 401, 99 S.Ct. 1171, 1177, 59 L.Ed.2d 401 (1979) (Interstate Regional Planning Authority created by Nevada and California was not an arm of the state subject to its control and accordingly, not entitled to immunity from suit in federal court under the eleventh amendment; an entity created by interstate compact "comparable to a county or municipality" has no Eleventh Amendment immunity); *Ford Motor Co. v. Dept. of Treasury*, 323 U.S. 459, 464–466, 65 S.Ct. 347, 350–351, 89 L.Ed. 389 (1945) (where recovery would, in essence, be from state treasury, state official entitled to immunity); *Port Authority Police Benevolent Ass'n v. Port Authority of New York and New Jersey*, 819 F.2d 413, 418 (3d Cir.) *cert. denied*, 484 U.S. 953, 108 S.Ct. 344, 98 L.Ed.2d 370 (1987) (Port Authority considered a state agency for purposes of Eleventh Amendment immunity); *Skehan v. State System of Higher Education*, 815 F.2d 244, 249 (3d Cir.1987) (Pennsylvania's State System for Higher Education a state agency and thus entitled to immunity from suit in federal court); *Morris v. Washington Metropolitan Area Transit Authority*, 781 F.2d 218, 228 (D.C.Cir.1986) (transit authority immune as instrumentality of Virginia and Maryland); *Hall v. Medical College of Ohio at Toledo*, 742 F.2d 299, 307 (6th Cir.1984), *cert. denied*, 469 U.S. 1113, 105 S.Ct. 796, 83 L.Ed.2d 789 (1985) (medical college considered arm of state); *Tuveson v. Fla. Governor's Council on Indian Affairs*, 734 F.2d 730, 734 (11th Cir.1984) (Florida Governor's Council on Indian Affairs was state agency entitled to Eleventh Amendment immunity); *Dykman v. New Jersey Transit Rail Operations, Inc.*, 685 F.Supp. 79, 80 (S.D.N.Y.1988) (New Jersey Transit Rail Operations Inc. was an alter ego of the State of New Jersey entitled to Eleventh Amendment immunity); *Lewis v. Kelchner*, 658 F.Supp. 358 (M.D.Pa.1986) (suit against state university, its president and the Pennsylvania State System of Higher Education barred by the Eleventh Amendment). The Eleventh Amendment bars an action in federal court where " 'the state is the real, substantial party at interest' and any relief will effectively run against the state."

---

value of the fee simple interest in the property as of February 12, 1987 in the amount of $250,-000.00. (*See* Burton Affidavit at ¶ 4 and ¶ 5, and Exhibit "B").

**3.** The City of Camden here relies on the case of *Hoffman v. Connecticut Department of Income Maintenance*, 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989). In that case the Supreme Court held that in enacting § 106(c) of the Bankruptcy Code Congress did not abrogate the Eleventh Amendment immunity of the states, and that in two separate Chapter 7 cases, the Chapter 7 trustee's separate actions under §§ 542(b) and 547(b) of the Bankruptcy Code against the Connecticut Department of Income Maintenance and the Connecticut Department of Revenue Services, to recover money judgments, where the respondents had filed no proof of claim in the bankruptcy proceedings, such actions were barred by the Eleventh Amendment. 109 S.Ct. at 2821–22, 2824.

*Skehan v. State System of Higher Education, supra,* 815 F.2d at 246–47, *citing, Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) (citations omitted), *rev'g and remanding,* 673 F.2d 647 (3d Cir.1982) (*en banc*).

The Supreme Court has held, however, that municipalities and other political subdivisions of the states have no immunity under the Eleventh Amendment. *Owen v. City of Independence, Mo.* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980); *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

In *Owen v. City of Independence, Mo.,* the Supreme Court, in holding that a municipality has no immunity from damages liability under 42 U.S.C. § 1983, stated:

"There is nothing in the character of a municipal corporation which entitles it to an immunity from liability for such malfeasances as private corporations or individuals would be liable for in a civil action. A municipal corporation is liable to the same extent as an individual for any act done by the express authority of the corporation, or of a branch of its government, empowered to act for it upon the subject to which the particular act relates, and for any act which, after it has been done, has been lawfully ratified by the corporation."

*Owen,* 445 U.S. at 640, 100 S.Ct. at 1410 (quoting T. Shearman & A. Redfield, *A Treatise on the Law of Negligence* § 120, p. 139 (1869).

In *Mt. Healthy City School District Board of Education v. Doyle,* a unanimous Supreme Court held that a local school board was not entitled to invoke any Eleventh Amendment immunity from suit brought in federal court asserting claims under the First and Fourteenth Amendments under 42 U.S.C. § 1983, stating:

"The bar of the Eleventh Amendment to suit in federal courts extends to States and state officials in appropriate circumstances, *Edelman v. Jordan,* 415 U.S. 651 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974);

*Ford Motor Co. v. Dept. of Treasury, supra,* but does not extend to counties and similar municipal corporations." *See Lincoln County v. Luning,* 133 U.S. 529, 530, 10 S.Ct. 363 [363], 33 L.Ed. 766 (1890); *Moor v. County of Alameda,* 411 U.S. 693, 717–721, 93 S.Ct. 1785, 1799–1801, 36 L.Ed.2d 596 (1973).

*Mt. Healthy,* 429 U.S. at 280, 97 S.Ct. at 572.

The cases are legion in this and other circuits holding that political subdivisions of the states, such as municipalities, counties, and towns, have no Eleventh Amendment immunity. *S.J. Groves and Sons Co. v. New Jersey Turnpike Authority,* 268 F.Supp. 568, 574 (D.N.J.1967) (counties and municipalities do not partake of the Eleventh Amendment immunity enjoyed by the states, although they clearly are public bodies and in many cases perform functions on behalf of the state); *Crane v. State of Texas,* 759 F.2d 412, 417 (5th Cir.), *cert. denied,* 474 U.S. 1020, 106 S.Ct. 570, 88 L.Ed.2d 555 (1985) (Dallas County not immune); *Scott v. Greenville County,* 716 F.2d 1409, 1422 (4th Cir.1983) (county not immune); *Hall v. Medical College of Ohio, supra,* 742 F.2d at 301 (municipalities, counties and other political subdivisions (e.g., public school districts) not immune); *Fouche v. Jekyll Island–State Park Authority,* 713 F.2d 1518, 1520 (11th Cir.1983) (Eleventh Amendment immunity applies to states and state officials but not to municipal corporations, counties or other political subdivisions of the state).

■ The defendant City of Camden argues that in the context of collecting delinquent property taxes, it was performing a governmental function on behalf of the State of New Jersey and should be considered an "arm, agency, or alter ego" of the state, entitled to immunity from federal court jurisdiction. (Defendant's Summary Supplementary Brief at pp. 2–5). In support of this contention, defendant relies on state statutes and decisions of the New Jersey state courts interpreting those statutes. (Defendant's Supplementary Brief at 2–5).[4] The question of whether a defen-

---

**4.** The City of Camden here argues that under New Jersey's constitutional structure of taxa-

tion, the City of Camden is merely a "taxing district" for the statutory assessment and collec-

dant is entitled to Eleventh Amendment immunity from jurisdiction in a federal court is one of federal law, however. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 455–456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976); *S.J. Groves & Sons Co. v. New Jersey Turnpike Authority, supra* at 571. As to whether a state body is an arm or alter ego of the state, the federal courts will look to state law treatment of the agency for guidance.[5] However where, as here, the defendant is a municipality, courts have consistently refused to find that sovereign immunity applies. *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency, supra,* 440 U.S. at 401, 99 S.Ct. at 1177 ('the Court has consistently refused to construe the Amendment to afford protection to political subdivisions such as counties and municipalities, even though such entities exercise a slice of state power' "); *Mt. Healthy City School District, supra,* 429 U.S. at 280, 97 S.Ct. at 572–573 ("local school board such as petitioner is more like a county or city than it is like an arm of the State [and therefore] not entitled to assert any Eleventh Amendment immunity from suit in the federal courts"); *Fitchik v. New*

tion of state taxes. *Citing* New Jersey In Rem Foreclosure Act, N.J.S.A. 54:5–104.29 *et seq.* and N.J.S.A. 54:5–104.30(a) ("Municipality" shall mean "every taxing district having the power to assess and collect taxes"). Defendant also relies upon the case of *City of Jersey City v. Martin,* 126 N.J.L. 353, 19 A.2d 40 (1941) where the Court stated:

> All taxes, whether levied for state, county or municipal purposes, are state taxes—they can be imposed by no other authority than that of the state. The state appropriates the proceeds to what purpose it sees fit; but however the process may be appropriated, every tax is a state tax ... [a] municipality is merely a political subdivision or department of the state. It is an agency created for the exercise within the prescribed limits, of the governmental functions and powers of the state. It is but the creature of the state, and exists at its pleasure. As respects both its strictly governmental office and its municipal character for the conduct of local self-government, the Legislature is the exclusive source of its authority; and its continued corporate existence, as well as the scope of its powers, depends upon its will. Unless constitutionally secured, the municipality has no inherent right of self-government beyond the control of the state. 126 N.J.L. at 360–361, 19 A.2d 40. (*See* Defendant's Supplementary Brief at p. 3–4).

*Jersey Transit Rail Operations, Inc.,* 873 F.2d 655, 661 (3d Cir.), *cert. denied,* 493 U.S. 850, 110 S.Ct. 148, 107 L.Ed.2d 107 (1989) ("crystal clear" that counties and municipalities are not entitled to immunity from suit in federal court); *Port Authority Police Benevolent Assn., supra,* 819 F.2d at 414 (to enjoy immunity, entity must be an arm of the state rather than a body "comparable to a county or municipality") (quoting *Lake Country Estates, Inc., supra,* 440 U.S. at 401, 99 S.Ct. at 1177); *Hall v. Medical College of Ohio, supra* 742 F.2d at 301 (issue presented was whether a college could be considered an "arm" or "alter ego" of the state of Ohio, and therefore entitled to immunity, or whether it was merely a political subdivision which enjoyed no such immunity).

■ Here the Court finds that the City of Camden, as a political subdivision of the State of New Jersey, enjoys no sovereign immunity from suit in this Court. Accordingly, this Court need not decide whether any immunity has been waived or whether Congress abrogated the States' Eleventh Amendment immunity under § 106(c) of the Bankruptcy Code.[6]

5. The Third Circuit employs a nine part test to determine whether a state agency is an arm or alter ego of the state:

> [L]ocal law and decisions defining the status and nature of the agency involved in its relation to the sovereign are factors to be considered, but only one of a number that are of significance. Among the other factors, no one of which is conclusive, perhaps the most important is whether, in the event plaintiff prevails, the payment of the judgment will have to be made out of the state treasury; significant here also is whether the agency has the funds or the power to satisfy the judgment. Other relevant factors are whether the agency is performing a governmental or proprietary function; whether it has been separately incorporated; the degree of autonomy over its operations; whether it has the power to sue and be sued and to enter into contracts; whether its property is immune from state taxation, and whether the sovereign has immunized itself from responsibility for the agency's operations. *Kovats v. Rutgers, The State University,* 822 F.2d 1303, 1307 (3d Cir. 1987); *Urbano v. Bd. of Managers of the New Jersey State Prison,* 415 F.2d 247, 250–251 (3d Cir.1969) *cert. denied,* 397 U.S. 948, 90 S.Ct. 967, 25 L.Ed.2d 129 (1970).

6. 11 U.S.C. § 106 provides:

> (a) A governmental unit is deemed to have waived sovereign immunity with respect to

Having determined that this Court has jurisdiction over the matter, the Court must turn to the question of whether the entry of the In Rem Final Judgment was a fraudulent conveyance within the meaning of 11 U.S.C. § 548.

Section 548 of the Bankruptcy Code provides in relevant part:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

Subject to limitations not applicable herein, a debtor in possession enjoys the rights of a trustee serving in a case under Chapter 11. *See* 11 U.S.C. § 1107(a).

The parties at trial stipulated that, in the event that this court finds that the in rem tax foreclosure proceeding resulted in a "transfer" of an interest of the debtor in property under § 548 of the Bankruptcy Code, then the Debtor, Decalcomania received "less than a reasonable equivalent value in exchange for such transfer" and that the debtor "became insolvent as a result of such transfer or obligation." [7]

▮ In order to establish a fraudulent transfer under § 548(a)(2), five elements must be proven:

(1) that an interest of the debtor in property;

(2) was voluntarily or involuntarily transferred;

(3) within one year of the date of the filing of the petition;

(4) that the debtor received less than a reasonably equivalent value; and

(5) that the debtor was insolvent at that time of the transfer or became insolvent as a result thereof.

*In re Ananko,* 89 B.R. 399, 403 (Bkrtcy. D.N.J.1988) *remanded on other grounds sub nom, Ananko v. Harsanyi,* 91 B.R. 231 (D.N.J.1988).

Title 11 U.S.C. § 101(50) defines "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption." The word "transfer" therefore has a very broad meaning under the Bankruptcy Code. 2 *Collier on Bankruptcy* ¶ 101.50 (15th ed., rev. 1989). There are conflicting authorities as to whether a foreclosure sale is a "transfer" under section 548. In *In re Madrid,* 21 B.R. 424 (9th Cir.BAP 1982), *aff'd on other*

---

any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

(b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—

(1) a provision of this title that contains "creditor", "entity", or "governmental unit" applies to governmental units; and

(2) a determination by the court of an issue arising under such a provision binds governmental units.

7. *See* footnote 2, *supra.*

*grounds,* 725 F.2d 1197 (9th Cir.1984), the Ninth Circuit in the context of a nonjudicial foreclosure sale of the debtor's home, held that the debtor for purposes of § 548(a)(2)(A) "transferred" the property to the creditor not at the time of the foreclosure sale but when the security interest in the house was perfected under Nevada law. Since this occurred more than one year before the filing of debtor's petition, the transfer was held not voidable as a fraudulent conveyance under § 548(a)(2)(A).[8] 725 F.2d at 1199–1201.

The Fifth Circuit position is contrary to that held by the Ninth Circuit as represented by that court's decision in *Durrett v. Washington National Insurance Co.,* 621 F.2d 201 (5th Cir.1980). In *Durrett,* the Fifth Circuit held that the disposition of a debtor's property at a foreclosure sale constituted a "transfer" under the Bankruptcy Code. 621 F.2d at 204. While there has not been any Third Circuit decision as yet on this question, *Butler v. Lomas & Nettleton Co.,* 862 F.2d 1015 (3d Cir.1988), the precedent in this jurisdiction holds that a foreclosure sale is a "transfer" under § 548 of the Code. *In re Ananko, supra.* In the *Ananko* case, the United States District Court for the District of New Jersey stated:

"it is likely that the 1984 amendments to the Bankruptcy Code which added 'foreclosure of debtor's equity of redemption' to the list of transfers under section 101(50) and included 'involuntary' transfers under section 548 were meant to reject the position taken in *Madrid. See Collier on Bankruptcy* ¶ 1300.12(32). The only indication to the contrary is found in a portion of the legislative record concerning the 1984 amendments, which suggests that Congress intended to preserve the finality of non-collusive foreclosure sales. 130 Cong.Rec.

S.13771–S.13772 (no. 131, Pt. II, October 5, 1984). Significantly, these senatorial statements were not part of the debate over the amendments, but were placed on the record after the amendments were passed by Congress.

Appellee urges this court to apply the standard developed in *Madrid* to this case. However, I agree with those authorities who note that the 1984 amendments to the Code make application of *Madrid* an impossibility, regardless of how compelling the state interests in foreclosure may be. The bankruptcy court was correct in rejecting this approach."

*Ananko v. Harsanyi,* 91 B.R. 231, 234 n. 5 (D.N.J.1988).

The district court in *Ananko* noted that the position taken in *Madrid* ignores the fact that the debtor typically has equity in the house and that "[t]his equity interest of the debtor is 'transferred' within the meaning of the Code, when the house is sold at a foreclosure sale." 91 B.R. at 234.

This would seem to conclude the inquiry here, but for one fact; in the present case there has not been a foreclosure sale but instead entry of the In Rem Final Judgment on December 27, 1989. Therefore, the court must look to New Jersey state law to determine whether, and when, a transfer of the debtor's interest in the property occurred. *See Butner v. United States,* 440 U.S. 48, 54–57, 99 S.Ct. 914, 917–919, 59 L.Ed.2d 136 (1979) (property interests are created and defined by state law); *See also In re McKeon,* 86 B.R. 350, 368 (Bkrtcy.D.N.J.1988).

█ Under the New Jersey In Rem Tax Foreclosure Act, the In Rem Final Judgment of December 27, 1989, foreclosed the debtor, Decalcomania's equitable right of redemption. N.J.S.A. 54:5–104.64.[9]

---

**8.** The *Madrid* court relied on § 548(d)(1) which provides:

(d)(1) For the purposes of this section, a transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee, but if such transfer is not so perfected before the commencement of the case,

such transfer is made immediately before the date of the filing of the petition.

725 F.2d at 1200.

**9.** N.J.S.A. 54:5–104.64 provides:

(a) The judgment shall give full and complete relief, in accordance with the provisions of this act, and in accordance with any other statutory authority, to bar the right of redemption, and to foreclose all prior or subsequent alienations and descents of the lands

N.J.S.A. 54:5–104.67 provides that "[n]o application shall be entertained to reopen such judgment after three months from the recording thereof in the office of the county recording officer and then only upon the grounds of lack of jurisdiction or fraud in the conduct of the action." As of the date of the filing of this adversary proceeding, June 11, 1990, the Debtor had made no application in the Superior Court of New Jersey to reopen the In Rem Final Judgment. Further, N.J.S.A. 54:5–104.65 provides that the plaintiff "shall be seized of an estate in fee simple, in the lands described therein, absolute and free and clear of all liens and encumbrances," when the judgment is recorded in the county recording office. The entry of the December 27, 1989 In Rem Final Judgment effected a transfer of Decalcomania's right of redemption subject to the recording of the judgment in the office of the county recording officer.[10] Because the date of the transfer was within one year of the filing of the Debtor, Decalcomanials petition, June 4, 1990, this Court finds that the entry on December 27, 1989 of the "In Rem Final Judgment" was a fraudulent transfer and therefore subject to avoidance under 11 U.S.C. § 548(a)(2).

Accordingly, the Court will enter judgment in favor of the Debtor and against the City of Camden declaring (1) that the transfer of the debtor's interest in the property located at 600 Mechanic Street, Camden, New Jersey by entry of the December 27, 1989 "In Rem Final Judgment" is avoided as a fraudulent transfer, (2) the City of Camden shall deliver possession of the subject premises to the debtor in possession, and (3) title to the subject property shall be transferred and vested in the debtor in possession.

An order in conformance with this Opinion shall be submitted.

and encumbrances thereon, and to adjudge an absolute and indefeasible estate of inheritance in fee simple in the lands therein described, to be vested in the plaintiff.

(b) Such judgment shall be binding and final upon all persons having a vested or contingent title or interest in or lien or claim upon or against said lands, including the State of New Jersey, and any agency and political subdivision thereof, and their heirs, devisees and personal representatives, and their, or any of their heirs, devisees and personal representatives, and their, or any of their heirs, devisees, executors, administrators, grantees, assigns or successors in right, title or interest, notwithstanding any infancy or incompetency of such person or persons, and upon all other persons, their heirs, devisees and personal representatives and their or any of their heirs, devisees, executors, administrators, grantees, assigns or successors in right, title or interest.

10. While this record does not make clear the filing of a copy of this judgment with the office of the county recording officer, such a fact does not affect this court's determination as to whether a transfer of an interest of the debtor in property occurred. The recording of the judgment instead may affect the enforceability of the judgment.