**In re CF REALTY TRUST, Debtor.**

**CF REALTY TRUST, Plaintiff,**

**v.**

**TOWN OF HAMPSTEAD and Richard Hartung as Selectman and not individually and Raymond DeMatteo as Selectman and not individually and Joseph A. Guthrie as Selectman and not individually, Defendants.**

Bankruptcy No. 93–10897.
Adv. No. 93–1051.

United States Bankruptcy Court,
D. New Hampshire.

Sept. 29, 1993.

Victor Dahar, Manchester, NH, for plaintiff.

Robert Fryer, Londonderry, NH, for defendant.

## MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

The above-captioned proceeding was heard before the Court on August 20, 1993 on the chapter 11 debtor-in-possession's ("debtor") complaint pursuant to 11 U.S.C. § 548 to avoid the defendant Town of Hampstead's (the "town") issuance of a tax collector's deed to itself on the theory that the transfer was for less than reasonably equivalent value and thus a voidable conveyance under the statute.

The town's Answer relies on subsections 548(a) and 548(d)(1), asserting first that tax collector deed transfer occurred more than one year before the petition date and second that the town's recording of the tax collector deed has secured its interest in the subject property such that the debtor "cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee,...." 11 U.S.C. § 548(d)(1). This Court has jurisdiction of this proceeding pursuant to 28 U.S.C. § 1334(b). This is a core matter pursuant to 28 U.S.C. § 157(b)(2)(H). The following constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R.Bankr.P. 7052.

## I. FACTS

The debtor is engaged in the business of making second mortgages on real property in the northern New England region. It filed for bankruptcy relief under chapter 11 on March 30, 1993. It commenced the instant adversary complaint on April 5, 1993. In the complaint, the debtor claims that the town transferred a 1.28 acre parcel of land with a commercial building thereon to itself by tax collector deed for delinquent real property taxes amounting to $3,871.62. According to the town's Answer, the delinquent taxes were $8,894.62. The difference is immaterial because at the August 20, 1993 hearing, the debtor's principal operating officer gave testimony that the fair market value of the property is approximately $450,000, with a net equity of approximately $200,000. Even using the town's delinquent tax number, the tax collector deed transfer was for approximately 4.5% of the debtor's equity in the property.

## II. APPLICABLE LAW

Code section 548, "Fraudulent transfers and obligations," provides in relevant part that:

§ 548. Fraudulent transfers and obligations.

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred, on or within one

year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

\* \* \* \* \* \*

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

\* \* \* \* \* \*

(d)(1) For the purposes of this section, a transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee, but if such transfer is not so perfected before the commencement of the case, such transfer is made immediately before the date of the filing of the petition.

## III. DISCUSSION

### A. When did the interest transfer?

█ At the outset, the Court rejects the town's position that the relevant transfer occurred more than two years prior to the petition date and is thus barred by subsection 548(a)'s one year time limit. The town insists that the relevant transfer date was August 21, 1990, the date on which the town recorded a tax collector's lien. At the August 20, 1993 hearing I rejected that claim ruling from the bench that the relevant transfer date is the date on which the tax collector's deed is recorded. That is the date when the interest of the debtor was transferred. That was on December 30, 1992, which is well within 548(a)'s one year time limit.

### B. Are tax lien foreclosure transfers avoidable?

The defendants' first position is that the state law tax deeding mechanism is impervious to voidable transfer review in a bankruptcy proceeding. This is so, so the argument goes, because the tax collector deeding mechanism is essential for local government financing. The defendants maintain that the "club" of the tax collector's deed is necessary to ensure that property owners timely pay their real estate taxes. At least two Circuit Courts of Appeals have rejected the analogous sweeping generalization that regularly conducted, non-collusive foreclosure sales are immune from § 548 voidable conveyance attack. *In re Bundles*, 856 F.2d 815 (7th Cir. 1988); *Durrett v. Washington Nat'l Ins. Co.*, 621 F.2d 201 (5th Cir.1980); *contra In re Madrid*, 21 B.R. 424 (9th Cir. BAP 1982), *aff'd on other grounds*, 725 F.2d 1197 (9th Cir.1984); *contra In re BFP*, 974 F.2d 1144 (9th Cir. BAP 1992), *cert. granted sub nom. BFP v. Resolution Trust Corp., Receiver for Imperial Sav. & Loan Ass'n*, — U.S. —, 113 S.Ct. 2411, 124 L.Ed.2d 635. The fact that neither *Bundles* nor *Durrett* involved facts of a tax lien foreclosure sale (which in all relevant particulars is a "foreclosure" of the tax lien) does not mitigate the persuasive force these decisions exert on the present case.

█ It is contended that state tax collector deeding mechanisms are in fact an integral part of financing the on-going provision of public goods and services. It is also true that the Congress did not specifically consider the reach of section 548 in this context when it adopted the 1978 Code. It is certainly arguable that had they considered the question of state law tax deeding mechanisms, they might have well made an exception to the sweep of section 548.[1] Nonetheless, the language of section 548 is clear and this Court cannot find any principled basis as a judicial matter to read an exception into

---

1. By comparison, New Hampshire's version of the Uniform Fraudulent Transfer Act, N.H. R.S.A. § 545–A:1 *et seq*, does carve out specific exception to the sweep of the state statute. Section 545–A:8(V), "Defenses, Liability, and Protection of Transferee," specifically excepts lease terminations and enforcement of UCC article 9 security interests from attack under the state statute.

section 548.[2] The Court concludes that the tax lien foreclosure sale at bar, just like any other state law foreclosure procedure, is subject to the plain sweep of section 548.

In *In re National Environmental Systems,* 111 B.R. 4 (Bankr.D.N.H.1989), I considered basically the same issue. In *National Environmental Systems,* a chapter 11, I set aside a pre-petition non-judicial foreclosure sale of the debtor's real property pursuant to the plain language of section 548(a)(2). *Id.* at 13. The numbers of *National Environmental Systems* involved a property the Court determined to be worth some $555,000, which was foreclosed for $380,000, or roughly 68% percent of the property's value. *Id.* at 7.

In *National Environmental Systems,* I traced the origin and development of three distinct lines of cases applying section 548. For sake of simplicity, the three groupings may be referred to as the *Durrett* rule, otherwise known as the 70% rule, the *Madrid* rule, which grants an irrebuttable presumption of reasonably equivalent value in the context of "regularly conducted, non-collusive foreclosure sales," and finally the *Bundles* rules, which proceeds on a case by case basis, reviewing all the circumstances surrounding the sale, not just the price term alone. *National Environmental Systems* 111 B.R. at 8–10. In *National Environmental Systems* I adopted the *Bundles* approach and I adhere to it today. *National Environmental Systems Corporation* at 10.

The same result the debtor urges here was obtained in *In re Decalcomania,* 142 B.R. 670 (Bankr.D.N.J.1990). In *Decalcomania,* the City of Camden instituted an in rem tax foreclosure proceeding under New Jersey state law as a result of the debtor's $49,-101.07 real property tax delinquency on a property having a fair market value of $250,-000. *Id.* at 671 n. 2. After the debtor's failure to answer or appear, the state superior court entered an "in rem final judgment"

of foreclosure. *Id.* at 671. As in the present case, once in bankruptcy the debtor sought avoidance of the in rem final judgment under Code section 548(a)(2). Since the *Decalcomania* parties had stipulated before trial that the debtor received less than reasonably equivalent value, Judge Gambardella found a voidable transfer and enjoined the City of Camden to transfer title to the property back to the debtor. *Id.* at 677.

While the Court understands that a similar case is currently before the New Hampshire Supreme Court in the case of *First NH Bank v. Town of Windham,* No. 92–579, which was apparently argued on May 11, 1993, this party is entitled to relief now. Under the Court's *Bundles* approach to § 548 avoiding actions and with *Decalcomania* as well-reasoned pertinent authority, it is clear that the subject transfer in this case for approximately 4.5% of its fair market value was a voidable transfer within the plain meaning of Code section 548.

## CONCLUSION

For all the foregoing reasons, the Court hereby concludes that on the facts present, the issuance of the tax collector's deed to the town for approximately 4.5% of the subject property's fair market value was a transfer for less than reasonably equivalent value within the meaning of section 548 of the Bankruptcy Code and that such transfer can be avoided under that statute. Plaintiff within 30 days hereof shall submit a form of final judgment and order, in accordance herewith, requiring retransfer of the property upon payment of all unpaid taxes.

---

**2.** To the Court's mind, the question of whether a tax sale deed should be excepted from fraudulent transfer statutes raises legislative policy questions that are substantial. Even if this Court had power to determine that policy question it would address the question only after developing empirical data as to the importance of rather draconi-

an default tax collection procedures to the continual pay down of unpaid property taxes. However, that is not within the province of this Court. Moreover, the Court simply has no way of developing that empirical data in order to read an exception into the language of the statute.